IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF IOWA

| | |
|---|---|
| IOWA PORK PRODUCERS ASSOCIATION, LINN VALLEY PIGS, LLP, TWIN PRAIRIE PORK, LLC, and NEW GENERATION PORK, INC., <br><br> Plaintiffs, <br><br> v. <br><br> ROB BONTA, in his official capacity as Attorney General of California, KAREN ROSS, in her official capacity as Secretary of the California Department of Food and Agriculture, and TOMAS ARAGON, in his official capacity as Director of the California Department of Public Health, <br><br> Defendants. | CASE NO.  3:21-cv-03018-CJW-MAR <br><br><br> **DEFENDANTS' MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO DISMISS PLAINTIFFS' AMENDED PETITION** <br><br> **[Fed. R. Civ. P. 12(b)(1), (2), (3)]** |

# TABLE OF CONTENTS

INTRODUCTION ....................................................................................................................1

BACKGROUND ......................................................................................................................2

I.    Proposition 12 .............................................................................................................2

II.   Previously Filed and Pending Proposition 12 Litigation .........................................3

III.  The Amended Petition.................................................................................................4

A.    Parties, Venue, and Causes of Action ...........................................................4

B.    Proposition 12's Alleged Effects ...................................................................5

1.    Effects on Plaintiffs .........................................................................5

2.    Effects on Others ..............................................................................6

C.    Allegations that Proposition 12 Targeted Out-of-State Activity.................6

ARGUMENT ....................................................................................................................7

I.  Sovereign Immunity Precludes an Iowa Court From Hearing this Matter
    Because Defendants Are the State of California. ......................................................7

II. Iowa Courts Lack Personal Jurisdiction Over Defendants Because No
    Jurisdictional Contacts Can Be Shown and Because It Is Neither Fair Nor
    Convenient For California To Be Haled Into Iowa Court ....................................10

    A.  Legal Standard—Personal Jurisdiction .......................................................10

    B.  Plaintiffs Cannot Establish Defendants Have the Requisite
        Minimum Contacts with Iowa or That Exercise of Personal
        Jurisdiction Otherwise Comports with Due Process ................................11

        1.  The Court Lacks General Jurisdiction Over Defendants .............12

        2.  The Court Lacks Specific Jurisdiction Over Defendants .............12

            a.  The Eight Circuit's primary three factors weigh
                against a finding of personal jurisdiction.........................12

                (1)  The analysis of direct contacts weighs
                     against a finding of personal jurisdiction...............12

                (2)  The Supreme Court's "Effects Test"
                     weighs against a finding of personal
                     jurisdiction .............................................................13

            b.  The Eighth Circuit's final two factors do not
                support a finding of personal jurisdiction .........................16

III. Venue Is Improper In Iowa and the Case Should Be Dismissed; In the
     Alternative, the Case Should Be Transferred to California or Stayed
     Pending Resolution of the Duplicative, Earlier-Filed Cases.................................17

    A.  Convenience of Parties Weighs in Favor of Transfer ...............................18

    B.  Interests of Justice Weigh in Favor of Transfer .........................................18

    C.  In the Alternative, the Case Should be Stayed Pending Resolution
        of Related, Pending Litigation in California................................................19

CONCLUSION ............................................................................................................ 20

# TABLE OF AUTHORITIES

**CASES**

*Am. Littoral Soc. v. E.P.A.*
  943 F. Supp. 548 (E.D. Pa. 1996) ........................................................................................ 18, 19

*Atl. Marine Const. Co., Inc. v. U.S. Dist. Court for W. Dist. of Tex.*
  134 S. Ct. 568 (2013) ......................................................................................................... 17

*B&G Products Co. v. Vacco*
  No. Civ. 98-2436 ADM/RLE, 1999 WL 33592887 (D. Minn. Feb. 19, 1999) ......................... 14

*Bell Paper Box, Inc. v. Trans W. Polymers, Inc.*
  53 F.3d 920 (8th Cir. 1995) ............................................................................................... 13

*Burger King Corp. v. Rudzewicz*
  471 U.S. 462 (1985) ...................................................................................................... 11, 12

*Burlington Indus., Inc. v. Maples Indus., Inc.*
  97 F.3d 1100 (8th Cir. 1996) ............................................................................................. 10

*Calder v. Jones*
  465 U.S. 783 (1984) ....................................................................................................... 13, 14

*Church v. Missouri*
  913 F.3d 736 (8th Cir. 2019) ............................................................................................ 8, 9

*Daimler AG v. Bauman*
  134 S. Ct. 746 (2014) ......................................................................................................... 12

*Dakota Indus., Inc. v. Dakota Sportswear, Inc.*
  946 F.2d 1384 (8th Cir. 1991) ........................................................................................ 12, 14

*Dever v. Hentzen Coatings, Inc.*
  380 F.3d 1070 (8th Cir. 2004) ........................................................................................ 10, 12

*Ecclesiastical Order of the Ism of Am, Inc. v. Chasin*
  845 F.2d 113 (6th Cir. 1988) .............................................................................................. 10

*Fitts v. McGhee*
  172 U.S. 516 (1899) ............................................................................................................ 8

*Gary W. Clem, Inc. v. Seed Research Equip. Sols., Inc.*
  No. 4:09-cv-00357-JAJ, 2010 WL 11509069 (S.D. Iowa Jul. 6, 2010) ................................. 19

iii

*Guinness Import Co. v. Mark VII Distribs., Inc.*
153 F.3d 607 (8th Cir. 1998) ...........................................................................................12

*Helicopteros Nacionales de Colombia v. Hall*
466 U.S. 408 (1984) .........................................................................................................11

*Hicks v. Assistant Atty. Gen. of Colo.*
No. 08-0362-CV-W-FJG, 2010 WL 5067611 (W.D. Mo. Dec. 6, 2010)................................14

*Honkamp Krueger Fin. Servs., Inc. v. Fulton*
No. C20-1018-LTS, 2020 WL 8225446 (N.D. Iowa, June 5, 2020).................................19, 20

*Jobe v. ATR Mktg., Inc.*
87 F.3d 751 (5th Cir. 1996) ...............................................................................................16

*Johnson v. Arden*
614 F.3d 785 (8th Cir. 2010) ........................................................................................13, 14

*L.A. Cty. Bar Ass'n v. Eu*
979 F.2d 697 (9th Cir. 1992) ...............................................................................................8

*Land–O–Nod Co. v. Bassett Furniture Indus.*
708 F.2d 1338 (8th Cir. 1983)............................................................................................12

*Leroy v. Great Western United Corp.*
443 U.S. 173 (1979) ..............................................................................................17, 18, 19

*Lindgren v. GDT, LLC*
312 F. Supp. 2d 1125 (S.D. Iowa 2004) ..............................................................................13

*Lujan v. Def. of Wildlife*
504 U.S. 555 (1992) ......................................................................................................9, 10

*McCabe v. Basham*
450 F. Supp. 2d 916 (N.D. Iowa 2006) ...............................................................................15

*Missouri ex. rel. Koster v. Harris*
847 F.3d 646 (9th Cir. 2017) ...............................................................................................3

*Missouri v. California*
139 S. Ct. 859 (2019) ...........................................................................................................3

*N. Am. Meat Inst. v. Becerra*
420 F. Supp. 3d 1014 (C.D. Cal. 2019) .................................................................................4

*N. Am. Meat Inst. v. Becerra*
825 F. App'x. 518 (9th Cir. 2020)......................................................................................3, 4

iv

*Nat'l Pork Producers Council v. Ross*
456 F. Supp. 3d 1201 (S.D. Cal. 2020), *appeal docketed* (9th Cir. filed June 17, 2020) ........................................................................................................................3

*Nat'l Pork Producers Council v. Ross*
No. 20-55631 (9th Cir. filed Jun. 17, 2020) ............................................................3

*Okpalobi v. Foster*
244 F.3d 405 (8th Cir. 2001) ..................................................................................8

*Omaha Tribe of Nebraska v. Barnett*
245 F. Supp. 2d 1049 (D. Neb. 2003) ...................................................................17

*Orthmann v. Apple River Campground, Inc.*
765 F.2d 119 (8th Cir. 1985) ................................................................................ 20

*Pennhurst State Sch. & Hosp. v. Halderman*
465 U.S. 89 (1984) ..................................................................................................8

*PTI, Inc. v. Philip Morris Inc.*
100 F. Supp. 2d 1179 (C.D. Cal. 2000) ................................................................17

*Quern v. Jordan*
440 U.S. 332 (1979)................................................................................................8

*Second Amendment Found. v. U.S. Conference of Mayors*
274 F.3d 521 (D.C. Cir. 2001) .............................................................................10

*Seminole Tribe of Fl. v. Florida*
517 U.S. 44 (1996) ..................................................................................................8

*Signature Holding Co. v. City of Kimberling City, Missouri*
3:10-cv-00129, 2011 WL 13119100 (S.D. Iowa Mar. 3, 2011) ...........................16

*Simon Fire Equip. & Repair, Inc. v. Town of Cloverdale, Indiana*
No. C05-1051-LRR, 2006 WL 156740 (N.D. Iowa Jan. 20, 2006) ..................17, 18

*Sioux Pharm. Inc. v. Summit Nutritionals Int'l*
859 N.E.2d 182 (Iowa 2015)................................................................................ 11

*Soo Line R.R. Co. v. Hawker Siddeley Can., Inc.*
950 F.2d 526 (8th Cir. 1991) ............................................................................... 13

*Stewart v. North Carolina*
393 F.3d 484 (4th Cir. 2005).................................................................................8

v

*Stroman Realty, Inc. v. Wercinski*
    513 F.3d 476 (5th Cir. 2008) ................................................................ 14, 15, 16

*Summers v. Earth Island Inst.*
    555 U.S. 488 (2009) ........................................................................................ 9

*Summit Med. Assocs. P.C. v. Pryor*
    180 F.3d 1326 (11th Cir. 1999) ..................................................................... 8

*Terra Int'l, Inc. v. Mississippi Chem. Corp.*
    119 F.3d 688 (8th Cir. 1997) ................................................................... 18, 19

*Van Dusen v. Barrack*
    376 U.S. 612 (1964) ...................................................................................... 17

*Wells Fargo Fin. Leasing, Inc. v. Orlando Magic Ltd.*
    431 F. Supp. 2d 955 (S.D. Iowa 2006) ....................................................... 18

*Will v. Mich. Dep't of State Police*
    491 U.S. 58 (1989) ....................................................................................... 11

*Ex parte Young*
    209 U.S. 123 (1908) ........................................................................................ 8

**STATUTES**

United States Code, Title 28
    § 1404 ........................................................................................................... 17
    § 1404(a) ....................................................................................................... 17

United States Code, Title 42
    § 1983 ............................................................................................................. 8
    § 1988 ............................................................................................................. 5

California Government Code
    § 900.6 ........................................................................................................... 8

California Health and Safety Code
    §§ 25990-25991 ............................................................................................. 1
    §§ 25990-25993 ............................................................................................. 2
    § 25991 ........................................................................................................... 1
    § 25993 ........................................................................................................... 9
    § 25993(b) ...................................................................................................... 2
    § 25993.1 ........................................................................................................ 2
    § 25996 ........................................................................................................... 3

Iowa Code
  § 617.3 ............................................................................................................. 4, 11

**COURT RULES**

Federal Rules of Civil Procedure
  Rule 4(k)(1)(A) ...................................................................................................10
  Rule 12 ...............................................................................................................1
  Rule 12(b)(1) .....................................................................................................7
  Rule 12(b)(2) ................................................................................................ 7, 10
  Rule 12(b)(3) .....................................................................................................7

# INTRODUCTION

Plaintiffs Iowa Pork Producers Association ("IPPA") and three of IPPA's members filed this constitutional challenge to California's Proposition 12 in Iowa state court. Proposition 12, an amendment to the Prevention of Cruelty to Farm Animals Act, was an initiative adopted by a majority of the California electorate in the 2018 General Election. The Act provides that all whole pork meat sold in California, whether it originates in California or elsewhere, must come from breeding sows who have not been "confined in a cruel manner," as defined in the statute. *See* Cal. Health & Safety Code, §§ 25990-25991 (Prop. 2, § 3, approved Nov. 4, 2008, operative Jan. 1, 2015, amended by Prop. 12, § 3, approved Nov. 6, 2018, eff. Dec. 19, 2018). Additionally, breeding sows housed in California must not be "confined in a cruel manner." *Id.* The current definition of cruel confinement has been in effect since 2018, but after December 31, 2021, the applicable definition of cruel confinement will require more space for the breeding sow than the currently applicable definition. *Id.* § 25991.

Three federal courts, district courts in the Southern and Central District of California and the Court of Appeals for the Ninth Circuit, have considered the constitutionality of Proposition 12. These courts have either held or affirmed that the constitutional challenges are unlikely to succeed on the merits. *See infra* Background II. The case filed in the Southern District of California (against the same Defendants as here) was brought by the National Pork Producers Council ("NPPC"), which consists of 42 state associations, one of which is Plaintiff IPPA, and of which Farm Plaintiffs are members (*see* Defs.' Request for Jud. Notice ("RJN"), Exhs. 1 & 2). Undeterred, Plaintiffs here have haled Defendants—officials of the State of California—into court in Iowa to address the same allegations.

This case should be dismissed under Rule 12 of the Federal Rules of Civil Procedure for the following reasons: First, California (like Iowa) is a sovereign state that may not be haled into another state's courts by citizens of that state, and the limited exception of *Ex parte Young* does not apply here. *See infra* Argument I. Second, California has no jurisdictional contacts with Iowa, and any effects of Proposition 12 on Iowan Plaintiffs do not create such contact, because Plaintiffs do

1

not and cannot allege the Act was passed specifically to harm, or otherwise targets, Iowa. Moreover, exercise of personal jurisdiction would violate traditional notions of fair play and substantial justice, because a state cannot be expected to be haled into court anywhere in the nation simply because it enacts regulatory legislation. *See infra* Argument II. Third, venue in this Court is improper because the Court lacks subject matter and personal jurisdiction over Defendants. The case should be dismissed on that basis. In the alternative, because Plaintiff IPPA, through the national organization NPPC consisting of it and its sister associations, has already sued Defendants in the Southern District of California to overturn Proposition 12, this Court should exercise its discretion to transfer to the case to the California court. Finally, if not dismissed or transferred, the case should be stayed pending the outcome of the other federal cases. *See infra* Argument III.

## BACKGROUND

### I.  PROPOSITION 12

In November 2018, California voters passed Proposition 12, the Prevention of Cruelty to Farm Animals Act. Prop. 12, § 2, as approved by voters, Gen. Elec. (Nov. 6, 2018), text located at https://vig.cdn.sos.ca.gov/2018/general/pdf/topl.pdf#prop12, pp. 87-90 (Cal. General Election Nov. 6, 2018, "Text of Proposed Laws" voter guide). Proposition 12 amended sections 25990 through 25993 of the California Health and Safety Code and added section 25993.1. *Id.* §§ 3-7. Proposition 12 defined specific minimum square-feet requirements for the confinement of calves, hens, and pigs. *Id.* § 4. The initiative also prohibited the sale of eggs or meat in the State of California when the producing animal was confined in a cruel manner. *Id.* § 3. The penalty provisions of Proposition 12 are as follows:

> Any person who violates any of the provisions of this chapter is guilty of a misdemeanor, and upon conviction thereof shall be punished by a fine not to exceed one thousand dollars ($1,000) or by imprisonment in the county jail for a period not to exceed 180 days or by both such fine and imprisonment.

Cal. Health & Safety Code § 25993(b).

Proposition 12 was preceded by the ballot initiative Proposition 2, enacted by voters in 2008, and by Assembly Bill No. 1437 ("AB 1437"), which the California Legislature enacted in 2010.

2

Proposition 2 was the original Prevention of Farm Animal Cruelty Act, and Proposition 12 strengthens its confinement standards. AB 1437 prohibited the sale in California of eggs produced by egg-laying hens that were not confined in compliance with Proposition 2's animal care standards. Cal. Health & Safety Code § 25996. The penalties for violating Proposition 2 and AB 1437 are the same as for Proposition 12. A challenge to AB 1437 brought by six states under the dormant Commerce Clause was dismissed for lack of standing. *Missouri ex. rel. Koster v. Harris*, 847 F.3d 646, 650 (9th Cir. 2017). A larger group of states unsuccessfully sought to initiate an original jurisdiction action against California in the United States Supreme Court. *Missouri v. California*, 139 S. Ct. 859 (2019) (mem.).

## II. PREVIOUSLY FILED AND PENDING PROPOSITION 12 LITIGATION

Two cases challenging the constitutionality of Proposition 12 are currently pending, both filed in California. The NPPC and the American Farm Bureau Federation filed suit in 2019 challenging Proposition 12 under the dormant Commerce Clause. *Nat'l Pork Producers Council v. Ross*, 456 F. Supp. 3d 1201 (S.D. Cal. 2020), *appeal docketed*, No. 20-55631 (9th Cir. filed June 17, 2020). The NPPC is a collective of state associations, one of which is IPPA.[1] The district court dismissed the case with leave to amend and, when NPPC chose not to amend its complaint, dismissed the case with prejudice. *Id.* at 1210. The next day, NPPC noticed its appeal, which is pending. *Nat'l Pork Producers Council v. Ross*, No. 20-55631 (9th Cir. filed Jun. 17, 2020).

An additional constitutional challenge to Proposition 12 is pending in the United States Supreme Court on petition for a writ of certiorari to the United States Court of Appeals for the Ninth Circuit. *N. Am. Meat Inst. v. Becerra*, 825 F. App'x. 518 (9th Cir. 2020), *petition for cert. filed*, No. 20-1215 (U.S. Feb. 26, 2021) (challenging denial of motion for preliminary injunction). Petitioner North American Meat Institute ("NAMI"), a trade association representing meat packers and processors, sued Defendants in 2019 and concurrently filed a motion for preliminary

---

[1] Defendants respectfully request that this Court take judicial notice of Plaintiffs' relationships to NPPC. *See* RJN Exhs. 1 & 2. The full extent of the relationships between Plaintiffs and the various association petitioners in the California cases is not known.

injunction challenging Proposition 12's standards for veal and pork products that are sold in California. *See N. Am. Meat Inst. v. Becerra*, 420 F. Supp. 3d 1014 (C.D. Cal. 2019). The district court denied NAMI's motion for preliminary injunction, and the Ninth Circuit affirmed. *N. Am. Meat Inst.*, 825 Fed. Appx. at 520.

## III. THE AMENDED PETITION

### A. Parties, Venue, and Causes of Action

Plaintiffs are the association IPPA, suing on behalf of itself and its members (Am. Pet. ¶ 96), and three pork producers: Linn Valley Pigs LLP ("LVP"), Twin Prairie Pork, LLC ("TPP"), and New Generation Pork, Inc. ("NGP") (hereinafter, collectively, "Farm Plaintiffs"). Am. Pet. 1. IPPA "consists of structured county associations across the state [of Iowa]…with members in nearly every county in Iowa, including Franklin County [where the suit was originally filed]." *Id.* ¶ 32. All Farm Plaintiffs are "pork producers" located in Iowa who "suppl[y] pork that is sold into California."[2] *Id.* ¶¶ 33-35. No Plaintiff is located in Franklin County. *Ibid.*; RJN Exh. 2, at p. 5 [IPPA is located in the greater Des Moines area].

Plaintiffs contend that Defendant Bonta, the Attorney General of the State of California; Defendant Ross, the Secretary of the California Department of Food and Agriculture ("CDFA"); and Defendant Aragón, the Director of the California Department of Public Health ("CDPH"), are "responsible for implementation of Proposition 12" (Am. Pet. ¶¶ 36-38) and that "acting under color of state law, [they] have committed, and will continue to commit, multiple constitutional torts against Plaintiffs[.]" (*id.* ¶¶ 108, 123, 136, 153, 164, 181). As to CDFA and CDPH, Plaintiffs allege that they were statutorily required to promulgate regulations implementing the Act, but have not. *See, e.g., id.* ¶¶ 142-43. Defendants are sued in their official capacities only. *Id.* ¶¶ 36-38.

Plaintiffs allege venue is proper in Franklin County, Iowa, under Iowa Code § 617.3, because (1) "Defendants committed tortious actions which have or will produce injury…to property and

---

[2] Contrary to this allegation, NGP has been administratively dissolved. *See, infra,* n. 5.

4

persons located within Franklin County, with knowledge that significant harm would be felt in Iowa" (Am. Pet. ¶ 41) and (2) IPPA has members in Franklin County (*id.* ¶ 32).

Plaintiffs seek injunctive and declaratory relief based on purported violations of United States Constitution; specifically, they plead violations of the Commerce Clause (Count I), the Due Process Clause (Counts II & III), the Privileges and Immunities Clause (Count IV), the Supremacy Clause (preemption of Proposition 12 by the Packers and Stockyards Act, 7 U.S.C. § 192 et seq.) (Count V), and the Equal Protection Clause (Count VI). *Id.* at 19-31. They also seek attorneys' fees and costs pursuant to 42 U.S.C. § 1988. *Id.* at 31-32, ¶ 1.

**B.    Proposition 12's Alleged Effects**

**1.    Effects on Plaintiffs**

Plaintiffs allege that "Proposition 12 makes Iowa pork producers unable to sell their pork for consumption into California unless those out-of-state pork producers comply with both California's Turn Around Requirements and 24 square footage restrictions on and after January 1, 2022." Am. Pet. ¶ 18. Although Plaintiffs accurately describe Proposition 12 as "prohibit[ing] the sale of pork meat within the state of California from animals confined in a manner inconsistent with California's restrictions, regardless of where in the nation the animal was raised" (*id.* ¶ 1), there is no allegation that any of the Plaintiffs, or their employees, actually participate in the sale of pork to anyone in California, or themselves ever sold pork directly "into California."

Plaintiffs also contend Proposition 12 "imposes confinement requirements on out-of-state pork producers" (Am. Pet. ¶ 1), but concede that the effects are "indirect" (*id.* ¶ 116). The Amended Petition further states that "[t]he vast majority of Iowa pork producers are not currently in compliance with California's Turn Around Requirements or 24 square foot restrictions, and the estimated cost to come into compliance with these restrictions could reach millions of dollars for a pork producer to comply." *Id.* ¶ 20. Plaintiffs allege that "[n]ot selling to California is not an option" because "the California market makes up 13-15% of the nation's pork consumption market"; as such, Proposition 12 "will impose enormous costs on Iowa pork producers" and will "substantially interfere with commerce among the states in hogs and whole pork meat markets."

5

*Id.* ¶¶ 22-23, 89; *see also id.* ¶¶ 83-84 (alleging Proposition 12 will require either land purchases or "wasteful harvest of pigs", and "likely" lead to "significant health risks and piglet loss"). Finally, Plaintiffs contend:

> Even if producers were able to forego the California market, there would be drastic impacts on the nationwide pork industry and further irreparable harm to small pork producers. The remaining nation would need to absorb the additional supply of pork, which would result in a 25% reduction in farm receipts. Again, the smaller producers are most threatened, likely unable to sustain the losses and would be forever forced out of the market.

*Id.* ¶ 93.

There is no allegation that any of the Farm Plaintiffs or any *particular* IPPA member does not already comply with Proposition 12's requirements, is unable to comply with them, or has suffered any *specific* harm from them or from Proposition 12 as a whole. Nor is there any allegation that Proposition 12 will be enforced outside of California.

Although IPPA brings this suit on behalf of itself as well as its members (*id.* ¶ 95), IPPA does not allege any harm to itself separate from that to its members.

### 2. Effects on Others

In addition to the purported harms to pork producers, Plaintiffs identify various other downstream problems allegedly created by Proposition 12's restrictions on pork sold in California. They contend that "criminal penalties can be assessed against both business owners and operators who are non-compliant with Proposition 12 who choose to 'engage in a sale' of non-compliant pork meat within California. Am. Pet. ¶ 19. Plaintiffs also allege that they, as pork producers, "are faced with downstream adverse effects whereby pork *packers* face immediate suspension from fulfillment of federal contracts." *Id.* ¶ 28 (emphasis added). Ultimately, they conclude, Proposition 12 will "increase[e] food costs for all Americans[.]" *Id.* ¶ 23.

### C. Allegations that Proposition 12 Targeted Out-of-State Activity

Plaintiffs allege that "Proposition 12 directly and intentionally targeted out-of-state activity, both through the confinement requirements and by stifling interstate commerce through the prohibition of sale of non-compliant pork meat into and within California." Am.

Pet. ¶ 53. Plaintiffs point to "[m]ultiple statements by the sponsors of Proposition 12 confirm[ing] that Proposition 12 was intended to reach out-of-state production and that the drafters and sponsors…were aware of its extra-territorial effects." *Id.* ¶ 54; *see also id.* ¶¶ 55-57 (regarding impacts on "out-of-state producers" generally); ¶ 58 (alleging another motive was protecting California producers by regulating them under earlier legislation, thus giving out-of-state producers "less, and insufficient, time to comply").[3] Based on these general statements showing that Proposition 12 was intended to ensure that all pork sold in California—regardless of which state it comes from—complies with its confinement requirements, Plaintiffs allege:

> This Court has jurisdiction over Defendants because their unconstitutional and tortious acts and omissions were aimed at Iowa, where a significant amount of the nations' pigs for pork production are located and confined, with knowledge that harm will primarily be felt by Iowa pork producers and primarily impact property located within Iowa.

*Id.* ¶ 41.

## ARGUMENT

This case should be dismissed on grounds of sovereign immunity pursuant to Rule 12(b)(1) of the Federal Rules of Civil Procedure (*see infra* I.), for lack of personal jurisdiction pursuant to Rule 12(b)(2) of the Federal Rules of Civil Procedure (*see infra* II.), and due to improper venue pursuant to Rule 12(b)(3) of the Federal Rules of Civil Procedure (*see infra* III.). Alternatively, it should be transferred to the Southern District of California or, at a minimum, stayed until resolution of the earlier-filed, duplicative cases now pending in the Ninth Circuit and the Supreme Court (*see infra* III.).

## I. SOVEREIGN IMMUNITY PRECLUDES AN IOWA COURT FROM HEARING THIS MATTER BECAUSE DEFENDANTS ARE THE STATE OF CALIFORNIA.

The amended petition should be dismissed with prejudice because its claims are barred by

---

[3] Plaintiffs allege that Iowa has 960,000 breeding pigs (Am Pet. ¶ 5), whereas California has only 8,000, of which "[o]nly approximately 1,500…are used in commercial breeding…and [those] are situated in a handful of very small farms" (*id.* ¶ 12).

7

sovereign immunity, which generally prohibits lawsuits against states and state officers in federal court. [4] *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 100 (1984). Sovereign immunity bars all suits against the state regardless of the relief sought, including declaratory and injunctive relief. *See id.* at 101; *Seminole Tribe of Fl. v. Florida,* 517 U.S. 44, 58 (1996). State sovereign immunity applies unless the state has unequivocally consented to such a suit or Congress has abrogated the state's immunity. *See, e.g.*, *Church v. Missouri*, 913 F.3d 736, 743 (8th Cir. 2019). Neither has happened here. A state does not waive its general sovereign immunity by removing an action from state court to federal court. *Id.* at 742-43 (differentiating Eleventh Amendment immunity, which is waived on removal); *Stewart v. North Carolina*, 393 F.3d 484, 490 (4th Cir. 2005) (state did not waive sovereign immunity by voluntarily removing to federal court). Nor did Congress abrogate such immunity when it enacted 42 U.S.C. § 1983. *See Quern v. Jordan*, 440 U.S. 332, 341 (1979). Accordingly, Defendants are entitled to sovereign immunity unless an exception applies. As explained below, none does.

The Supreme Court has recognized a limited exception to Eleventh Amendment sovereign immunity in *Ex parte Young*, 209 U.S. 123 (1908), which permits actions for prospective declaratory or injunctive relief against state officers sued in their official capacities for their alleged violations of federal law. Even assuming *Ex parte Young*'s exception can apply to overcome a state's general sovereign immunity, its requirements are not met here. For the *Ex parte Young* exception to apply, the state official sued must have direct responsibility for enforcement of the allegedly unconstitutional statute. *Okpalobi v. Foster*, 244 F.3d 405, 416-17 (8th Cir. 2001) (en banc); *Summit Med. Assocs. P.C. v. Pryor,* 180 F.3d 1326, 1341-42 (11th Cir. 1999). General executive responsibility or general enforcement powers are not enough. *See, e.g., Church*, 913 F.3d at 748 ("Missouri Constitution's general enforcement power" not enough); *Fitts v. McGhee*, 172 U.S. 516, 530 (1899) ("general executive responsibility" to "take care that the laws be faithfully executed" not enough); *L.A. Cty. Bar Ass'n v. Eu*, 979 F.2d 697, 704 (9th Cir. 1992) ("generalized

---

[4] Under California law, Defendant officials are the "State." Cal. Gov't Code. § 900.6.

Case 3:21-cv-03018-CJW-MAR   Document 10-1   Filed 06/25/21   Page 15 of 28

duty to enforce state law" not enough).

Here, Plaintiffs allege, in conclusory fashion, that Defendant Attorney General Bonta "is responsible for the enforcement of Proposition 12." Am. Pet. ¶ 36. However, Plaintiffs have not credibly alleged and cannot show that Defendant Bonta has any direct authority to enforce Proposition 12. Rather, Defendant Bonta has only generalized enforcement authority under the California Constitution, which is insufficient to invoke *Ex parte Young*. *Church*, 913 F.3d at 748. The case should therefore be dismissed as to Defendant Bonta.

Plaintiffs next allege, again in conclusory fashion, that Defendants Secretary of the CDFA and Director of the CDPH are "responsible for implementation of Proposition 12." Am. Pet. ¶¶ 37-38. It is certainly true that the statute requires these agencies to "jointly promulgate rules and regulations for the implementation of [Proposition 12]." Cal. Health & Safety Code, § 25993. But "promulgation" or "implementation" authority is not enforcement authority, and certainly not the direct responsibility for enforcement *Ex parte Young* requires. (And, if promulgation were the basis for the Plaintiffs' allegations, legislative immunity would apply.) Thus, the exception of *Ex parte Young* does not apply to these Defendants, and the entire case should be dismissed on grounds of sovereign immunity.[5]

---

[5] Plaintiffs also appear to lack standing, which they have the burden to establish (*Lujan v. Def. of Wildlife*, 504 U.S. 555, 561 (1992)). *First,* Plaintiff IPPA lacks direct standing because does not allege that it has suffered any injury as result of Proposition 12. Nor could it. IPPA is not a pork producer, nor does it sell pork in (or into) California. Am. Pet. ¶ 32. Proposition 12's requirements therefore do not apply to it. *Second,* IPPA cannot establish associational standing, because the amended petition does not include "*specific allegations* establishing that at least one identified member has suffered or would suffer harm." *Summers v. Earth Island Inst.*, 555 U.S. 488, 498 (2009) (italics added). Rather, Plaintiffs allege only "[o]ne or more IPPA members has standing[;]...[t]housands of IPPA members are directly subject to Proposition 12 because they breed or raise pigs that are being sold into and within California;" and that "[t]he vast majority of Iowa pork producers are currently raising pigs that do not meet Proposition 12's requirements." Am. Pet. ¶¶ 97, 101. But critically, Plaintiffs do not allege that Proposition 12 has actually prevented them from selling their products. Instead, Plaintiffs seemingly ask the Court to assume that they will at some point in the future. But this sort of conjecture is precisely what the Supreme Court has said is insufficient. *Summers*, 555 U.S. at 497-98. *Third,* Farm Plaintiffs have also failed

## II. IOWA COURTS LACK PERSONAL JURISDICTION OVER DEFENDANTS BECAUSE NO JURISDICTIONAL CONTACTS CAN BE SHOWN AND BECAUSE IT IS NEITHER FAIR NOR CONVENIENT FOR CALIFORNIA TO BE HALED INTO IOWA COURT.

The petition also should be dismissed for lack of personal jurisdiction over Defendants

### A. Legal Standard—Personal Jurisdiction

Federal Rule of Civil Procedure 12(b)(2) permits a pre-answer motion to dismiss for "lack of personal jurisdiction." Plaintiffs bear the burden of proving jurisdiction is proper. *Burlington Indus., Inc. v. Maples Indus., Inc.*, 97 F.3d 1100, 1102 (8th Cir. 1996). A federal district court generally may assert personal jurisdiction over a defendant who would be subject to jurisdiction in state court in the state where the district court is located (Fed. R. Civ. P. 4(k)(1)(A)) so long as such exercise is consistent with the Fourteenth Amendment due process principles (*Dever v. Hentzen Coatings, Inc.*, 380 F.3d 1070, 1072 (8th Cir. 2004)). "To survive a motion to dismiss for lack of personal jurisdiction, a plaintiff must state sufficient facts in the complaint to support a reasonable inference that the defendants can be subjected to jurisdiction within the state." *Id.* (quotation marks and citation omitted). "Once jurisdiction has been controverted or denied, the plaintiff has the burden of proving such facts." *Id.* at 1072–73 (citations, internal quotation marks, and alterations omitted). A finding of jurisdiction cannot rest on conclusory allegations. *See, e.g., Second Amendment Found. v. U.S. Conference of Mayors*, 274 F.3d 521, 524 (D.C. Cir. 2001); *Ecclesiastical Order of the Ism of Am, Inc. v. Chasin*, 845 F.2d 113, 116 (6th Cir. 1988).

---

to sufficiently allege the harm required for standing. Under Article III, a plaintiff must establish the following three elements: (1) an injury in fact; (2) a causal connection; and (3) redressability. The alleged "injury in fact" must be "concrete and particularized" and "actual, or imminent, not conjectural or hypothetical." *Lujan*, 504 U.S. at 560. The conjectural and hypothetical allegations that unidentified "Iowa pork producers cannot realistically…come into compliance on or before December 31, 2021, and will thus be forced to harvest their breeding pigs…or …to forego one of the largest pork consumption markets" due to enforcement of Proposition 12 are insufficient to allege that any of these Plaintiffs have will suffer a concrete injury that is sufficiently traceable to and has the requisite causal connection to Proposition 12. *Finally,* Plaintiff NGP has been administratively dissolved by the Secretary of State, and has no legal capacity to sue whatsoever. *See* RJN Exh. 3 [certificates of administrative dissolution for the two entities registered as "New Generation Pork, Inc."].

Due Process requires that a defendant have certain minimum contacts with the forum state, so that the defendant has fair warning of the possibility of suit in a foreign jurisdiction, and can reasonably anticipate being haled into court to defend itself there. *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 474 (1985). Iowa state law "authorizes the widest exercise of personal jurisdiction allowed by the Due Process clause." *Sioux Pharm. Inc. v. Summit Nutritionals Int'l*, 859 N.E.2d 182, 188 (Iowa 2015).[6]

**B.     Plaintiffs Cannot Establish Defendants Have the Requisite Minimum Contacts with Iowa or That Exercise of Personal Jurisdiction Otherwise Comports with Due Process**

Under both the Due Process Clause and the apparently coextensive Iowa long-arm statute, the exercise of personal jurisdiction by an Iowa court over these Defendants would be improper. Here, because Defendants are named only in their official capacities, personal jurisdiction must be examined in light of Defendants' actions as representatives of the State of California, not as individual defendants. *See, e.g.*, *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 (1989) ("[A] suit against a state official in his or her official capacity is not a suit against the official but rather …against the official's office. As such, it is not different from a suit against the State itself."). Plaintiffs do not and cannot allege the requisite minimum contacts between the State of California and the forum state. Even if they could, the exercise of jurisdiction over California in Iowa does not comport with Due Process.

The minimum contacts requirement may be met in two ways: through general jurisdiction, requiring that the defendant has conducted "substantial, or continuous and systematic" activities within the forum state; or through specific jurisdiction, requiring that the controversy have arisen out of the defendant's actions within the forum state, depending on the quality and nature of its contacts with the forum state. *Helicopteros Nacionales de Colombia v. Hall*, 466 U.S. 408, 414 n.8

---

[6] Plaintiffs assert jurisdiction under Iowa Code § 617.3. Am. Pet. ¶ 42. But section 617.3's plain language does not include state governments (or agencies) within its ambit. Iowa Code § 617.3 (referencing "foreign corporations" and "nonresident persons"). Because Iowa's long-arm statute does not reach Defendants, it provides an additional basis for dismissal.

11

(1984). Plaintiffs here cannot make the required showing under either standard.

### 1. The Court Lacks General Jurisdiction Over Defendants

General jurisdiction is proper only if a defendant's contacts are "so continuous and systematic as to render [it] essentially at home in the forum State." *Daimler AG v. Bauman*, 134 S. Ct. 746, 754 (2014). But here, Defendants have no continuous and systematic contacts with the State of Iowa and it would be a contradiction in terms to find California "essentially at home" in Iowa. In any event, Plaintiffs appear to allege only specific jurisdiction. *See* Am. Pet. ¶ 41 ("This Court has jurisdiction…because [Defendants'] acts were aimed at Iowa.").

### 2. The Court Lacks Specific Jurisdiction Over Defendants

Minimum contacts establishing specific jurisdiction exist where "the defendant has purposefully directed his activities at residents of the forum and the litigation results from alleged injuries that arise out of or relate to those activities." *Burger King Corp.*, 471 U.S. at 472-73 (internal quotes and citations omitted).

The Eighth Circuit Court of Appeals instructs courts to consider five factors in assessing whether personal jurisdiction may be constitutionally exercised over a defendant. *Land–O–Nod Co. v. Bassett Furniture Indus.*, 708 F.2d 1338, 1340 (8th Cir. 1983). Those factors are: (1) the nature and quality of [the defendant's] contacts with the forum state; (2) the quantity of such contacts; (3) the relation of the cause of action to the contacts; (4) the interest of the forum state in providing a forum for its residents; and (5) the convenience of the parties. *Guinness Import Co. v. Mark VII Distribs., Inc.*, 153 F.3d 607, 614 (8th Cir. 1998); *Dever*, 380 F.3d at 1073–74. The first three factors are the most important. *Dakota Indus., Inc. v. Dakota Sportswear, Inc.*, 946 F.2d 1384, 1390 (8th Cir. 1991).

#### a. The Eight Circuit's primary three factors weigh against a finding of personal jurisdiction

##### (1) The analysis of direct contacts weighs against a finding of personal jurisdiction

Simply put, Defendant have no contacts with the forum state:

- California is not an Iowa resident, is not physically present in Iowa, and has not

consented to suit in Iowa related to the causes of action.

- Plaintiffs do not allege any *fact* connecting California to Iowa, much less that Defendants purposefully directed their activities at residents of Iowa.

- Plaintiffs do not allege that Defendants ever wrote to or communicated with anyone in Iowa or took an enforcement or other action in Iowa.

- Defendants have not purposefully availed themselves of the privilege of conducting activities within Iowa or invoked the benefits and protections of Iowa's laws.

Defendants' lack of physical presence in Iowa and complete lack of contacts with Iowa weigh strongly against a finding of jurisdiction in Iowa under the first three of the five factors. *See, e.g.*, *Bell Paper Box, Inc. v. Trans W. Polymers, Inc.*, 53 F.3d 920, 922 (8th Cir. 1995) (finding corporation's lack of physical presence in forum state weighed against exercise of jurisdiction); *Soo Line R.R. Co. v. Hawker Siddeley Can., Inc.,* 950 F.2d 526, 530 (8th Cir. 1991) (holding defendants' lack of contacts with forum state easily overrode any other interests that may have favored a finding of jurisdiction).

> **(2) The Supreme Court's "Effects Test" weighs against a finding of personal jurisdiction**

Where it is alleged that tortious activity in a foreign state resulted in harm in the forum state, the "Effects Test" of *Calder v. Jones*, 465 U.S. 783 (1984), may be incorporated into the first three factors of the Eighth Circuit's five-part test described above. *Johnson v. Arden*, 614 F.3d 785, 795-97 (8th Cir. 2010). Application of this test likewise confirms this Court lacks personal jurisdiction over Defendants.

The Effects Test provides:

> A defendant's tortious acts can serve as a source of personal jurisdiction only where the plaintiff makes a prima facie showing that the defendant's acts (1) were intentional, (2) were uniquely or expressly aimed at the forum state, and (3) caused harm, the brunt of which was suffered—and which the defendant knew was likely to be suffered—[in the forum state].

*Id.* at 796 (*quoting Lindgren v. GDT, LLC*, 312 F. Supp. 2d 1125, 1132 (S.D. Iowa 2004). This "allows the assertion of personal jurisdiction over non-resident defendants whose acts are

13

performed for the very purpose of having their consequences felt in the forum state." *Id.* (*quoting Dakota Indus., Inc.*, 946 F.2d at 1390-91. "['Effects'-based personal] jurisdiction is rare." *Stroman Realty, Inc. v. Wercinski*, 513 F.3d 476, 486 (5th Cir. 2008). None of the elements of the Effects Test are met here.

First, any harm to Plaintiffs was not intentional. Proposition 12, as shown by Plaintiffs' factual allegations, is intended to protect farm animals from cruel confinement. Am. Pet. ¶¶ 55-56 (noting proponents' claims of "wins for animals" and similar statements). And there certainly is no evidence that it was intended to hurt Iowa.

Second, relatedly, there is no evidence that Proposition 12 targeted Iowa. It is not enough that Iowan Plaintiffs may feel effects of Proposition 12 in Iowa. Rather, Defendants' alleged tortious activity must have been "uniquely or expressly aimed at the forum state" in particular, and for the very purpose of having consequences in the forum state, to satisfy the second element of the Effects Test. *See, e.g., Stroman,* 513 F.3d at 486*; Johnson,* 614 F.3d at 798 (although plaintiffs operated in Missouri, Effects Test not satisfied because tortious acts were directed at plaintiffs, but not at Missouri). Plaintiffs have not made—and cannot credibly make—any such allegations.

California's regulation of activity occurring within its state (here, the sale of pork) does not show the requisite targeting. Rather, there is no dispute that Proposition 12's requirements apply equally to pork sold from farms in all 50 states. Such regulation cannot be the basis for personal jurisdiction over California nationwide, because California could not reasonably anticipate being haled into court in every state. *See Calder*, 465 U.S. 783, 790; *see also B&G Products Co. v. Vacco*, No. Civ. 98-2436 ADM/RLE, 1999 WL 33592887, at * 4 (D. Minn. Feb. 19, 1999) (employing Eighth Circuit contacts test; "By merely regulating a Minnesota-based company, New York has not subjected itself to lawsuit in the home state of one of its many regulatory targets."); *Hicks v. Assistant Atty. Gen. of Colorado*, No. 08-0362-CV-W-FJG, 2010 WL 5067611 (W.D. Mo. Dec. 6, 2010) (similar).

While a conspiracy on the part of out-of-state defendants to specifically deprive *Iowans* of their constitutional rights could theoretically support a finding of jurisdiction, no credible

14

allegation of such a conspiracy is present here. As in *McCabe v. Basham*, 450 F. Supp. 2d 916 (N.D. Iowa 2006), Plaintiffs' conclusory "chain of assumptions" leading to California's supposed focus on harming Iowa in particular, a chain wherein "facts are noticeably absent," does not make out a prima facie case for personal jurisdiction. *Id.* (finding no personal jurisdiction over federal government department heads sued in their individual capacities). In *McCabe*, the court reviewed the complaint and found no allegations of any facts that would connect the federal government officials to Iowa. 450 F. Supp. 2d at 924. The court found instead that the allegations of conspiracy to harm Iowans were conclusory and the plaintiffs' "chain of assumptions," i.e., that "because there was a nationwide policy" it must have come from top level officials, did not make a prima facie case. *Id.* at 925-26. Likewise, Plaintiffs here allege no *facts* connecting the State of California—defendant state officials having been named in their official capacities—to Iowa. Rather, Plaintiffs allegations that Proposition 12 was aimed at Iowa are based on the mere assumption that, because Iowa has, allegedly, the most breeding pigs in the country, Proposition 12 must have been expressly aimed at Iowa. This assumption does not pass muster. As the Fifth Circuit explained in response to plaintiff Stroman Reality's allegation that Texas was the locus for jurisdiction because the Arizona real estate commissioner's regulatory actions were felt there:

> If the court adopted the approach urged by Stroman, we would endorse an interpretation of personal jurisdiction under which…any state official seeking to enforce her state's laws [] could potentially be subjected to suit in any state where the validity of her state's laws were in question. We are unwilling to establish such a broad principle.

*Stroman*, 513 F.3d at 485-87.

And critically, there is no allegation that Proposition 12 will be enforced in Iowa, nor would it be credible if there were. Plaintiffs' doublespeak allegations regarding pork being "sold into" California (*see, e.g.*, Am. Pet. ¶¶ 33, 66) do not show that Proposition 12 creates a direct connection to Iowa pork producers—selling pork that ends up in California is not the same as selling pork *in* California. And even if it were, there is no indication (or allegation) that any enforcement would occur in Iowa. Not as much as a letter has been sent to Iowa, nor has any other communication or enforcement attempt been alleged, despite the implication that sale of Farm Plaintiffs' pork,

currently—if sold in California—would violate Proposition 12 due to their pigs' confinement situation. *See id.* ¶ 65 ("The Turn Around Requirements are arguably already in effect"). In contrast to Plaintiffs' unfounded insinuations, their allegations of actual facts regarding statements made by the sponsors of Proposition 12 confirm that its effects were intended to reach out-of-state production of meat sold in California nationwide—not in Iowa in particular. *Id.* ¶ 53-57. Indeed, not one of the actual facts alleged specifically mentions Iowa. Like Arizona in *Stroman*, California simply seeks to uniformly apply its laws to activities that reach California—irrespective of the origin of such activities. California's laws regulate products sold within its borders without reference to geography. 513 F.3d at 486-87.

Finally, turning to the third element of the Effects Test, just as Plaintiffs have not and cannot make out a prima facie case that California expressly aimed tortious acts at Iowa, Plaintiffs cannot credibly allege that California's acts caused, or will cause, harm, the brunt of which will be suffered, and is likely to be suffered, in Iowa. In determining where injury occurred for jurisdictional purposes, actual injury must be distinguished from its resultant consequences, such as pain and suffering, economic effects, or other "collateral consequences" that often stem from actual injury. *See Jobe v. ATR Mktg., Inc.*, 87 F.3d 751, 754 (5th Cir. 1996). Plaintiffs' alleged harms are collateral consequences of Proposition 12, not actual injuries relevant to the jurisdictional analysis. Thus, not one of the three elements of the Effects Test is satisfied, and like the primary three factors of the five-factor test described above, its application weighs entirely against a finding of personal jurisdiction. That alone requires dismissal of this case.

### b.   The Eighth Circuit's final two factors do not support a finding of personal jurisdiction

The fourth and fifth factors of the Eighth Circuit test likewise do not support a finding of personal jurisdiction. The fourth factor is the interest of the forum state in providing a forum for its residents, but "[t]he state of Iowa's strong interest in protecting Iowa residents from damage…does not…outweigh all of the primary factors." *See Signature Holding Co. v. City of Kimberling City, Missouri*, 3:10-cv-00129, 2011 WL 13119100 (S.D. Iowa Mar. 3, 2011; *cf. PTI, Inc.*

16

*v. Philip Morris Inc.*, 100 F. Supp. 2d 1179 (C.D. Cal. 2000) ("California has little interest in adjudicating disputes over other states' statutes."); *Omaha Tribe of Nebraska v. Barnett*, 245 F. Supp. 2d 1049, 1055 (D. Neb. 2003) ("Federal judges sitting in their respective states will be better able to construe their respective laws[.]").  Here, Iowa has no particular interest in adjudicating another state's generally applicable law—and Plaintiffs do not—and cannot allege otherwise.

The fifth factor, the convenience of the parties weighs against a finding of jurisdiction, because the inconvenience to a government entity of suing its top official in a foreign state outweighs the inconvenience to individual plaintiffs.  *Simon Fire Equip. & Repair, Inc. v. Town of Cloverdale, Indiana*, No. C05-1051-LRR, 2006 WL 156740, at *6 (N.D. Iowa Jan. 20, 2006). Plaintiffs remain free to raise their concerns in California courts where Proposition 12 is the law. Indeed, other entities, including NPPC, of which Plaintiffs are either constituent entities or members, have done just that, and Plaintiffs' claims are currently being litigated in the Ninth Circuit and United States Supreme Court.  In sum, application of the five-factor test confirms this Court lacks personal jurisdiction over Defendants in Iowa, and the case should be dismissed.

## III. VENUE IS IMPROPER IN IOWA AND THE CASE SHOULD BE DISMISSED; IN THE ALTERNATIVE, THE CASE SHOULD BE TRANSFERRED TO CALIFORNIA OR STAYED PENDING RESOLUTION OF THE DUPLICATIVE, EARLIER-FILED CASES

As an initial matter, venue is improper because the Court lacks personal jurisdiction over Defendants.  *Atl. Marine Const. Co., Inc. v. U.S. Dist. Court for W. Dist. of Tex.*, 134 S. Ct. 568 (2013).  On that basis, the case should be dismissed.

Should the Court find that subject matter and personal jurisdiction exist and sovereign immunity does not bar suit, the Court should exercise its discretion under 28 U.S.C. § 1404 to transfer the matter to California for fairness, convenience, and efficiency.  *Leroy v. Great Western United Corp.*, 443 U.S. 173, 183-184 (1979) (explaining the multiple reasons venue is most appropriate in the state whose statute is being challenged).

The district court has discretion to evaluate motions for transfer of venue according to an "individualized, case-by-case consideration of convenience and fairness."  *Van Dusen v. Barrack*, 376 U.S. 612, 622 (1964) (applying 28 U.S.C. § 1404(a)).  The court has discretion to consider any

factor in evaluating whether a transfer is appropriate. *See, e.g., Wells Fargo Fin. Leasing, Inc. v. Orlando Magic Ltd.*, 431 F. Supp. 2d 955, 966 (S.D. Iowa 2006) (listing factors and quoting *Terra Int'l, Inc. v. Mississippi Chem. Corp.*, 119 F.3d 688, 691 (8th Cir. 1997)). "Convenience" factors include, not only the convenience of the parties, but the location where the conduct complained of occurred. *Id.* "Somewhat overlapping [] factors implicating the interest of justice include: [] judicial economy,…each party's ability to enforce a judgment,…and the advantages of having a local court determine questions of law." *Id.* All these weigh in favor of transfer to a district court in California—where litigation challenging Proposition 12 is already pending.

### A. Convenience of Parties Weighs in Favor of Transfer

As mentioned above, the burden on Defendants of an out-of-state suit weighs much more heavily than that on Plaintiffs, because Defendants are heads of agencies of the State of California. Haling them into court in Iowa not only inconveniences them, but hampers the administration of government of the State of California. *See, supra*, II.B.2.b. (citing *Simon Fire Equip. & Repair, Inc.*, 2006 WL 156740, at *6). Additionally, no behavior complained of has occurred in Iowa, nor are there allegations that any tortious action will occur in Iowa in the future. These factors, which implicate public rather than private interest, weigh heavily against venue in Iowa. *Cf. Am. Littoral Soc. v. E.P.A.*, 943 F. Supp. 548, 549 (E.D. Pa. 1996) (stating the court must also balance some of the public and private interests at stake in addition to the elements of convenience and fairness set out in the statute).

### B. Interests of Justice Weigh in Favor of Transfer

The interests of justice, another "public interest" factor (as applied to this case), also favor transfer to a California court because Plaintiffs' claims hinge on the interpretation and possible enforcement of California law.

As a general matter, California courts are better equipped to interpret California law. In *Leroy*, the U.S. Supreme Court held that venue was improper in Texas in an action involving an Idaho statute where the basis of the federal claim was future action that may be taken by Idaho officials to punish or remedy the violation of Idaho law. The court noted, "the nature of the action

challenging the constitutionality of a state statute made venue in the District of Idaho appropriate." *Leroy,* 443 U.S. at 186.

> The merits of Great Western's claims may well depend on a proper interpretation of the State's statute, and federal judges sitting in Idaho are better qualified to construe Idaho law, and to assess the character of Idaho's probable enforcement of that law, than are judges sitting elsewhere.

*Id.* (rejecting reasoning that would subject Idaho officials to suit in every district in the country.)

Further, judicial economy and the order in which the district courts obtained jurisdiction likewise weigh heavily in favor of transfer, because duplicative cases are already pending in California. *See, e.g.*, *Gary W. Clem, Inc. v. Seed Research Equip. Sols., Inc.*, No. 4:09-cv-00357-JAJ, 2010 WL 11509069, *1 (S.D. Iowa Jul. 6, 2010) ("first-to-file rule is a generally recognized doctrine of federal comity which permits a district court to transfer a case to a sister court so that all issues can be resolved in the same forum"). Relatedly, litigating this case in Iowa may raise concerns not present in California about the enforceability of the judgment. *See Terra Int'l, Inc.*, 119 F.3d at 691.

Finally, although Plaintiffs claim they will be affected by the outcome of this suit, millions of California citizens voted for this law and have an interest in the outcome of this case as well. *Cf. Am. Littoral Soc.*, 943 F. Supp. at 550. Further, and by Plaintiffs' own admission, Californians represent 13-15% of the pork consumption market. They have a great interest in the outcome of litigation passing on the constitutionality of their animal cruelty prevention act.

## C. In the Alternative, the Case Should be Stayed Pending Resolution of Related, Pending Litigation in California

If the Court declines to dismiss or transfer the case for the reasons described above, it should exercise its discretion to stay the matter pending resolution of prior-filed, related litigation pending in California federal courts. Such a stay is consistent with the principles of judicial economy and comity, and would best promote the interests of the parties and conserve the court's resources. "In order to 'promote efficient use of judicial resources' and prevent conflicting rulings, a district court has broad discretion to stay, transfer or 'decline jurisdiction over an action when a complaint involving the same parties and issues has already been filed in another district.'" *Honkamp Krueger*

19

*Fin. Servs, Inc. v. Fulton*, No. C20-1018-LTS, 2020 WL 8225446, at *2 (N.D. Iowa, June 5, 2020) (quoting *Orthmann v. Apple River Campground, Inc.*, 765 F.2d 119, 121 (8th Cir. 1985)).

In *Honkamp*, this Court applied the first-filed rule to defer the resolution of the parties' disputes to the District of Minnesota, and, noting its discretion to dismiss, transfer, or stay the case, stayed the matter indefinitely pending the outcome of the Minnesota proceedings. *Id.* at *7. Although the circumstances surrounding this case and the related litigation pending in California present a stronger basis for dismissal or transfer, *Honkamp* confirms that, in the event this Court concludes it has jurisdiction, it should—at a minimum—exercise its discretion to stay the matter pending resolution of the California actions.

## CONCLUSION

Defendants respectfully request this matter be dismissed for two independent reasons: (1) sovereign immunity bars suit against Defendant California state officials in federal court; and (2) Plaintiffs have failed to make allegations of specific facts establishing jurisdiction in Iowa over Defendant California state officials. Even if such allegations had been made, the exercise of jurisdiction would violate both the Iowa long-arm statute and the Due Process Clause, because Plaintiffs cannot show Defendants have the requisite minimum contacts with Iowa. In the alternative, Defendants respectfully request the Court exercise its discretion to transfer the matter to a district court in California, where duplicative constitutional challenges are pending; or stay the case pending the completion of the earlier-filed matters.

**Certificate of Service**

The undersigned certifies that the foregoing instrument was served upon the parties to this action by serving a copy upon each of parties listed as receiving notice on June 25, 2021, by CM/ECF.

*/s/ Adam D. Zenor*

Copy to:

Marnie A. Jensen
Ryann A. Glenn
HUSCH BLACKWELL LLP
13330 California Street, Suite 200
Omaha, NE 68154
Telephone: (402) 964-5000
Facsimile: (402) 964-5050
marnie.jensen@huschblackwell.com
ryann.glenn@huschblackwell.com

Eldon L. McAfee
Julie L. Vyskocil
Erin C. Herbold
BRICK GENTRY, P.C.
6701 Westown Parkway, Suite 100
West Des Moines, IA 50266
Telephone: (515) 271-5916
Facsimile: (515) 274-1488
eldon.mcafee@brickgentrylaw.com
julie.vyskocil@brickgentrylaw.com
erin.herbold@brickgentrylaw.com

*Attorneys for Plaintiffs*

Respectfully Submitted,

ROB BONTA, State Bar No. 202668
Attorney General of California
BENJAMIN M. GLICKMAN, State Bar No. 247907
Supervising Deputy Attorney General

By: */s/ Marla R. Weston*
MARLA R. WESTON, State Bar No. 209460

Deputy Attorney General
1300 I Street, Suite 125
P.O. Box 944255
Sacramento, CA 94244-2550
Telephone: (916) 210-7763
Fax: (916) 324-8835
E-mail: Marla.Weston@doj.ca.gov

ZENOR KUEHNER, PLC

By: */s/ Adam D. Zenor*
Adam D. Zenor, AT0009698

111 East Grand Avenue, Suite 400
Des Moines, IA 50309
Telephone: 515/650-9005
Fax: 515/206-2654
E-mail: adam@zenorkuehner.com

*Attorneys for Removing Parties Rob Bonta, in his official capacity as Attorney General of California; Karen Ross, in her official capacity as Secretary of the California Department of Food and Agriculture; and Tomás Aragón, in his official capacity as Director of the California Department of Public Health*

21