# UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF IOWA

IOWA PORK PRODUCERS ASSOCIATION,
LINN VALLEY PIGS LLP, TWIN PRAIRIE
PORK, LLC, and NEW GENERATION PORK,
INC.,

              Plaintiffs,

    v.

ROB BONTA, in his official capacity as
Attorney General of California, KAREN ROSS,
in her official capacity as Secretary of the
California Department of Food and Agriculture,
and TOMAS ARAGON, in his official capacity
as Director of the California Department of
Public Health,

              Defendants.

Case No. 3:21-cv-3018-CJW-MAR

**MEMORANDUM OF *AMICUS CURIAE* PERDUE PREMIUM MEAT COMPANY, INC.
D/B/A NIMAN RANCH IN OPPOSITION TO PLAINTIFFS' MOTION FOR
PRELIMINARY INJUNCTION**

# TABLE OF CONTENTS

**Page**

CORPORATE DISCLOSURE STATEMENT AND INTEREST OF AMICUS CURIAE ...... 1

INTRODUCTION ........................................................................................................ 2

BACKGROUND ......................................................................................................... 5

ARGUMENT .............................................................................................................. 6

I  Plaintiffs Are Not Likely To Succeed On The Merits Of Their Asserted Claims For Relief Pursuant To The Commerce Clause .................................... 6

II.  Plaintiffs Cannot Show That They Will Suffer Irreparable Harm In The Absence of Injunctive Relief ......................................................................... 12

III.  Plaintiffs Cannot Show That The Balance Of The Equities Tips In Their Favor Or That The Public Interest Favors An Injunction ............................... 13

CONCLUSION ......................................................................................................... 15

**TABLE OF AUTHORITIES**

**Page(s)**

Ass'n Des Éleveurs De Canards et D'Oies Du Québec v. Harris,
    No. 2:12-CV-05735-SVW-RZ, 2012 WL 12842942 (C.D. Cal. Sept. 28, 2012)..............13, 14

Ass'n des Eleveurs de Canards et d'Oies du Quebec v. Harris,
    729 F.3d 937 (9th Cir. 2013) .......................................................................... *passim*

Church of the Lukumi Babalu Aye, Inc. v. City of Hialeah,
    508 U.S. 520 (1993)........................................................................................11

CTS Corp. v. Dynamics Corp. of Am.,
    481 U.S. 69 (1987)........................................................................................12

Dep't of Revenue of Kentucky v. Davis,
    553 U.S. 328 (2008).......................................................................................7

Exxon Corp. v. Gov. of Md.,
    437 U.S. 117 (1978).....................................................................................8, 9

Gelco Corp. v. Coniston Partners,
    811 F.2d 414 (8th Cir. 1987) .........................................................................6

Grand River Enters. Six Nations, Ltd. v. Beebe,
    574 F.3d 929 (8th Cir. 2009) .........................................................................8

Iowa Utilities Bd. v. F.C.C.,
    109 F.3d 418 (8th Cir. 1996) .......................................................................12

Maryland v. King,
    567 U.S. 1301 (2012)...................................................................................14

Minnesota v. Clover Leaf Creamery Co.,
    449 U.S. 456 (1981).......................................................................................8

N. Am. Meat Inst. v. Becerra,
    825 F. App'x 518 (9th Cir. 2020) .................................................................4

N. Am. Meat Inst. v. Bonta,
    No. 20-1215, 2021 WL 2637862 (U.S. June 28, 2021) .........................................4

Nat'l Pork Producers Council v. Ross,
    456 F. Supp. 3d 1201, 1208 (S.D. Cal. 2020)...........................................................4

Nken v. Holder,
    556 U.S. 418 (2009)......................................................................................13

i

Oregon Waste Sys., Inc. v. Dep't of Env't Quality of State of Or.,
511 U.S. 93 (1994)........................................................................8

Pike v. Bruce Church, Inc.,
397 U.S. 137 (1970)......................................................................7

Planned Parenthood Minn., N.D., S.D. v. Rounds,
530 F.3d 724 (8th Cir. 2008) (en banc) ......................................6

Spiegel v. City of Houston,
636 F.2d 997 (5th Cir. 1981) ......................................................13

Turtle Island Foods, SPC v. Richardson,
425 F. Supp. 3d 1131 (W.D. Mo. 2019) aff'd sub nom. Turtle Island Foods,
SPC v. Thompson, 992 F.3d 694 (8th Cir. 2021) .......................14

United Haulers Ass'n, Inc. v. Oneida-Herkime Solid Mgmt. Auth.,
550 U.S. 330 (2007)......................................................................7

United States v. Stevens,
559 U.S. 460 (2010).....................................................................11

Watkins Inc. v. Lewis,
346 F.3d 841 (8th Cir. 2003) ......................................................6

**Statutes**

Cal. Health & Safety Code, § 25990(a) ..............................................5, 8

Cal. Health & Safety Code, § 25991(e)(1) ...........................................5

Cal. Health & Safety Code, § 25991(e)(3) ...........................................6

**Other Authorities**

About Niman Ranch, *available at* https://www.nimanranch.com/about-niman-ranch/..............................................................................................2

BALLOTPEDIA, California Proposition 12, Farm Animal Confinement Initiative (2018), *available at* https://ballotpedia.org/California_Proposition_12,_Farm_Animal_Confinement_Initiative_(2018)#Full_text...................................................5

ii

Coleman Natural Foods, How is Coleman Natural Foods responding to the
    Proposition 12 (California) and Question 3 (Massachusetts) initiatives?,
    *available at* https://www.colemannatural.com/faqs/ ..........................................................9, 10

Lynne Curry, Could Crate-Free Pork become the New Industry Standard?, Civil
    Eats, Oct. 26, 2020, *available* at https://civileats.com/2020/10/26/could-crate-
    free-pork-become-the-new-industry-standard/ ........................................................................11

Hormel Foods (Oct. 6, 2020), *available at*
    https://www.hormelfoods.com/newsroom/in-the-news/hormel-foods-
    company-information-about-california-proposition-12/...........................................................10

LinkedIn, Vande Rose Farms, *available at*
    https://www.linkedin.com/company/vande-rose-farms...........................................................10

Whole Foods Market, Meat Department Quality Standards, *available at*
    https://www.wholefoodsmarket.com/quality-standards/meat-standards .................................3

Whole Foods Market, Find a Whole Foods Market, *available at*
    https://www.wholefoodsmarket.com/stores..............................................................................3

iii

## CORPORATE DISCLOSURE STATEMENT AND INTEREST OF AMICUS CURIAE

Amicus Curiae Perdue Premium Meat Company, Inc., d/b/a Niman Ranch ("Amicus" or "PPMC" or "Niman Ranch") is a privately held corporation, and no publicly held corporation owns stock in Perdue Farms, Inc. [1] PPMC's parent corporation is Perdue Farms, Inc. Sioux-Preme® Packing Company is a wholly owned subsidiary of PPMC.

PPMC is a corporation organized under the laws of the State of California. PPMC is an industry leader in sustainable agriculture and humane animal care. PPMC's Niman Ranch brand started in the early 1970s on a family-owned cattle ranch in Bolinas, CA, raising cattle using traditional, humane methods – the same way they are raised today. See Declaration of Christopher Oliviero ("Oliviero Dec."), attached hereto, ¶ 2.

In the mid-1990's, Niman Ranch expanded to raising hogs when fifth-generation family farmer Paul Willis of Thornton, Iowa joined Niman, founding the Niman Ranch Pork Company. Id. ¶ 3. The Niman Ranch hog program was started in response to the rise of factory farming in the United States. Niman Ranch recognized that gestation crates, farrowing crates, and intense confinement are cruel to highly intelligent animals like pigs. Using sustainable farming techniques and strict animal husbandry standards, the Niman Ranch Pork Company has since grown into a network of over 650 independent family hog farmers, a third of which are located in Iowa. Id. ¶ 4.

Today, the Niman Ranch network includes 750 independent family farmers raising Certified Humane® beef, pork and lamb. These farms are fully compliant with Proposition 12. In addition to adhering to its commitment to no crates, Niman Ranch protocols require hogs to be raised on pasture or in deeply bedded pens; ensure bedding at all phases of a pig's life; and ban

---

[1] No counsel for a party authored the attached proposed amicus brief in whole or in part, and no entity or person, other than Proposed Amicus, made a monetary contribution intended to fund the preparation or submission of this memorandum brief.

1

teeth clipping, tail docking, and antibiotics. Id. ¶ 5. Niman Ranch's long industry experience has informed the company's approach to producing great tasting meat by caring for its animals, the land, and partner farmers. Id. ¶ 6; see also About Niman Ranch, *available at* https://www.nimanranch.com/about-niman-ranch/ (last accessed July 20, 2021).

This amicus memorandum offers an alternative industry voice to demonstrate that compliance is straightforward and economically feasible, and that certain industry leaders have already implemented and satisfied compliance requirements. Like other non-California businesses, Niman Ranch has been able to meet the Proposition 12 requirements that will take effect on January 1, 2022. Oliviero Dec. ¶ 7.

## **INTRODUCTION**

The text of Proposition 12 includes a clear purpose: "to prevent animal cruelty by phasing out extreme methods of farm animal confinement, which also threaten the health and safety of California consumers, and increase the risk of foodborne illness and associated negative fiscal impacts on the State of California." Prop. 12, §2. Plaintiffs claim that compliance with Proposition 12 will cause them irreparable harm because of the costs and effort needed to modernize their old-style, factory-farming techniques. Specifically, Plaintiffs claim:

> Proposition 12 would reach out and force America's pork producers to adhere to an onerous new regulatory scheme that would force massive facility overhauls, raise costs on consumers, and place animals and humans at risk. It would dismantle tried-and-true industry practices that have been established for generations, and substitute the political views of animal rights activists for the expertise of the agriculture professionals who steward Iowa's and the nation's pork production system.

Pls. Mem. 1.[2]

---

[2] Proposition 12 applies to calves raised for veal, breeding pigs, and egg-laying hens who are kept on farms, but Plaintiffs challenge only the application of Proposition 23 to breeding pigs and whole pork meat. See Pls. Mem. 2.

The reality is that Proposition 12 codifies animal welfare standards that producers like PPMC and retailers (such as Whole Foods) have been advancing for some time. For example, Whole Foods requires that companies that supply meat products to Whole Foods comply with the Global Animal Partnership ("G.A.P.") base certification standards. <u>See</u> Whole Foods Market, Meat Department Quality Standards, *available at* https://www.wholefoodsmarket.com/quality-standards/meat-standards (last accessed July 20, 2021). The first companies that went through the additional effort and additional cost to meet G.A.P. Base Certification 1 compliance initially benefitted from those efforts and continued to do so as those costs normalized. Oliviero Dec. ¶¶ 7, 13. The same is true of many of PPMC's animal welfare programs that created a solution for top grocers to get specialty natural products from leading authentic brands, all raised domestically from family farmers and ranchers, with high animal welfare standards, and no antibiotics. Oliviero Dec. ¶ 7. Retailers and producers are simply following consumer demands and their own humanitarian beliefs to produce what consumers want. Many of those consumers are the voters who overwhelmingly passed Proposition 12 in California. <u>See</u> Whole Foods Market, Find a Whole Foods Market, *available at* https://www.wholefoodsmarket.com/stores (stating that there are 92 Whole Foods Market stores in California) (last accessed July 20, 2021).

This is not a case about forced change and irreparable harm, but rather about voter/consumer preference and demand and basic industry competition to supply pork to those voters/consumers. Because the market is already shifting, the pork industry will not face irreparable harm. The economic path of the pork industry will be dictated by the inevitable need to comply with consumer preferences and demands embodied by Proposition 12. When it comes to consumer preferences, the writing is on the wall, and those preferences will prevail with or without Proposition 12. Those producers that prepare for and embrace that change will benefit.

3

Those suppliers that refuse to meet humane standards for the confinement of breeding pigs will be left behind. These are competitive choices to be made by all pork producers, not forced compliance that causes irreparable harm. There is no right to be protected from fair competition. Plaintiffs' challenge to Proposition 12 should be denied, and the law approved by California voters and consumers should be upheld.

Nearly identical Commerce Clause challenges to Proposition 12 have been rejected several times already by federal trial and appellate courts. In North American Meat Institute v. Becerra, the U.S. District Court for the Central District of California denied Plaintiff North American Meat Institute's ("NAMI") motion for a preliminary injunction, concluding "that NAMI fails to raise any questions on the merits of its three commerce clause claims that would support the issuance of a preliminary injunction." 420 F. Supp. 3d 1014, 1034 (C.D. Cal. 2019). The Ninth Circuit upheld the district court's decision. N. Am. Meat Inst. v. Becerra, 825 F. App'x 518, 519 (9th Cir. 2020). The Supreme Court subsequently denied NAMI's petition for certiorari. N. Am. Meat Inst. v. Bonta, No. 20-1215, 2021 WL 2637862 (U.S. June 28, 2021).

Similarly, in National Pork Producers Council v. Ross, the U.S. District Court for the Southern District of California granted Defendants' motion to dismiss a Commerce Clause challenge brought by the National Pork Producers Council ("NPPC"), of which Plaintiff Iowa Pork Producers Association is a member, ruling that NPPC had not sufficiently alleged that Proposition 12 regulates extraterritorially or that it substantially burdens interstate commerce, as required to state a claim under the dormant Commerce Clause. 456 F. Supp. 3d 1201, 1208, 1210 (S.D. Cal. 2020). NPPC appealed to the Ninth Circuit, which held oral argument in the case on April 14, 2021.

4

For the reasons discussed below and cited by the <u>North American Meat Institute</u> and <u>National Pork Producers Council</u> decisions, this Court should reject Plaintiffs' Commerce Clause challenges and deny the motion for a preliminary injunction.[3]

## **BACKGROUND**

On November 6, 2018, Californians voted in favor of Proposition 12 – Farm Animal Confinement Initiative by a significant margin of 63% to 37%. <u>See</u> BALLOTPEDIA, California Proposition 12, Farm Animal Confinement Initiative (2018), *available at* https://ballotpedia.org/California_Proposition_12,_Farm_Animal_Confinement_Initiative_(2018 )#Full_text. Proposition 12 amended the Prevention of Cruelty to Farm Animals Act, which, as relevant here, requires that all whole pork meat sold in California, whether produced in California or elsewhere, come from breeding pigs that have not been "confined in a cruel manner." Prop. 2, § 3, approved Nov. 4, 2008, operative Jan. 1, 2015, amended by Prop. 12, § 3, approved Nov. 6, 2018, eff. Dec. 19, 2018. The same standard applies to breeding pigs housed in California. <u>See</u> <u>Cal. Health & Safety Code, § 25990(a)</u>. The current definition of "confined in a cruel manner", which has been in effect since December 2018, includes: "Confining a covered animal in a manner that prevents the animal from lying down, standing up, fully extending the animal's limbs, or turning around freely." <u>Cal. Health & Safety Code, § 25991(e)(1)</u>. Effective January 1, 2022, however, and as relevant here, "confined in a cruel manner" will also include: "confining a breeding pig with less than 24 square feet of usable floorspace per pig." <u>Cal. Health & Safety</u>

---

[3] PPMC confines its arguments in opposition to Plaintiffs' motion for a preliminary injunction to Plaintiffs' Commerce Clause challenges to Proposition 12 presented in Count I of the Complaint, It takes no position on whether Plaintiffs can satisfy the requirements for obtaining injunctive relief for Counts II through VI.

Code, § 25991(e)(3). That is, effective January 1, 2022, under California law the minimum square-feet requirements for the confinement of breeding pigs will increase.

In the present action, Plaintiffs challenge Proposition 12's prohibition on the sale of whole pork meat in California that the owner or operator knows is the meat of a breeding pig confined in a cruel manner or the immediate offspring of such an animal. Plaintiffs challenge both the definition of "confined in a cruel manner" that is currently in effect and has been since December 2018, which requires that a breeding pig be able to lie down, stand up, fully extend its limbs, and turn around freely, as well as the definition that will go into effect January 1, 2022 increasing the enclosure-size requirements for breeding pigs. Plaintiffs seek a preliminary injunction on the enforcement and implementation of Proposition 12. Pls. Mem. 32.

## ARGUMENT

As injunctive relief is "an extraordinary remedy," the movant bears the burden of proof concerning the factors courts consider when determining whether to issue a preliminary injunction—(1) the likelihood of the success on the merits; (2) the threat of irreparable harm in the absence of relief; (3) the balance between the harm and the harm that the relief would cause to the other litigants; and (4) the public interest. Watkins Inc. v. Lewis, 346 F.3d 841, 844 (8th Cir. 2003); Gelco Corp. v. Coniston Partners, 811 F.2d 414, 418 (8th Cir. 1987). Plaintiffs cannot meet their burden of proof for their motion for a preliminary injunction.

## I. PLAINTIFFS ARE NOT LIKELY TO SUCCEED ON THE MERITS OF THEIR ASSERTED CLAIMS FOR RELIEF PURSUANT TO THE COMMERCE CLAUSE.

To enjoin a state statute, the movant must meet a heighted "likely to prevail on the merits" standard, more than a "fair chance" of success. See Planned Parenthood Minn., N.D., S.D. v. Rounds, 530 F.3d 724, 731-32 (8th Cir. 2008) (en banc). The rationale behind the heightened standard is that "a more rigorous standard 'reflects the idea that governmental policies

implemented through legislation or regulations developed through presumptively reasoned democratic processes are entitled to a higher degree of deference and should not be enjoined lightly.'" Id. at 732 (quoting Able v. United States, 44 F.3d 128, 131 (2d Cir. 1995)).

Plaintiffs contend that Proposition 12 violates the dormant Commerce Clause because it does not serve a legitimate state interest and, even if it did, "the impacts on interstate commerce are clearly excessive." Pls.' Br. at 18-20. Under the balancing test announced by the Supreme Court in Pike v. Bruce Church, Inc., 397 U.S. 137 (1970), "[w]here the statute regulates even-handedly to effectuate a legitimate local public interest, and its effects on interstate commerce are only incidental, it will be upheld unless the burden imposed on such commerce is clearly excessive in relation to the putative local benefits." Id. at 142. Judicial review under Pike is highly deferential. The Supreme Court has warned against judicial second-guessing of quintessentially legislative judgments. See Dep't of Rev. of Ky. v. Davis, 553 U.S. 328, 353 (2008) ("[T]he Judicial Branch is not institutionally suited to draw reliable conclusions of the kind that would be necessary for the Davises to satisfy a Pike burden in this particular case."); United Haulers Assoc'n, Inc. v. Oneida-Herkime Solid Mgmt. Auth., 550 U.S. 330, 347 (2007) (opinion of Roberts, C.J., joined by Souter, Ginsburg, and Breyer, JJ.) (rejecting "invitations to rigorously scrutinize economic legislation passed under the auspices of the police power" under Pike).

Nondiscriminatory laws like Proposition 12 raise no concerns under Pike. A party challenging a statute under Pike "must first show that the statute imposes a substantial burden before the court will 'determine whether the benefits of the challenged laws are illusory.'" Ass'n des Eleveurs de Canards et d'Oies du Quebec v. Harris, 729 F.3d 937, 951-52 (9th Cir. 2013) (citation omitted). Plaintiffs have not alleged facts demonstrating either that Proposition 12 imposes a substantial burden on commerce or that any such burden "clearly" outweighs the

benefits of the law. "[M]ost statutes that impose a substantial burden on interstate commerce do so because they are discriminatory." Id. at 952. Proposition 12, however, is not. The Proposition 12 sales ban makes no distinction between in-state and out-of-state pork producers.[4] It "regulates evenhandedly" in that it treats in-state and out-of-state producers and packers who wish to sell whole pork meat equally; all must satisfy California's requirements if they wish to sell their products in California. Such a statute "does not effect 'simple protectionism,'" and, therefore, does not run afoul of the dormant Commerce Clause. See Oregon Waste Sys., Inc. v. Dep't of Env't Quality of State of Or., 511 U.S. 93, 99 (1994); Minnesota v. Clover Leaf Creamery Co., 449 U.S. 456, 471-72 (1981) ("Minnesota's statute does not effect 'simple protectionism,' but 'regulates evenhandedly' by prohibiting all milk retailers from selling their products in plastic, nonreturnable milk containers, without regard to whether the milk, the containers, or the sellers are from outside the State."); see also Grand River Enters. Six Nations, Ltd. v. Beebe, 574 F.3d 929, 942 (8th Cir. 2009).

Plaintiffs do not argue that California's Proposition 12 standards will prevent the production of pork. Rather, they argue that compliance will be costly. That, alone, however, is not sufficient to constitute a substantial burden on interstate commerce. A statute that merely "preclude[s] Plaintiffs' 'more profitable' method of produc[tion]" of items bound for California does not impose a substantial burden on interstate commerce in violation of the Commerce Clause. Eleveurs, 729 F.3d at 952; see also Exxon Corp. v. Gov. of Md., 437 U.S. 117, 127-28 (1978) ("[T]he [Commerce] Clause protects the interstate market, not particular interstate firms, from prohibitive or burdensome regulations."). Moreover, Plaintiffs could produce some California-

---

[4] Plaintiffs have not brought a challenge to Cal. Heath & Safety Code § 25990(a), which prohibits "[a] farm owner or operator within the state" from knowingly causing any calf raised for veal, breeding pig, or egg-laying hen who is kept on a farm from being confined in a cruel manner.

compliant pork and some non-compliant pork. See Eleveurs, 729 F.3d at 950 ("Plaintiffs may force feed birds to produce foie gras for non-California markets."); see also Oliviero Dec. ¶ 13 ("PPMC's Siox-Preme® Packing Company has prepared its packing facilities to segregate California compliant pork to the extent any of its producers require packing for California bound pork after January 1, 2022."). Plaintiffs contend "it is unfeasible for out-of-state farmers to segregate animals that will eventually be sold into California," Pls.' Br. at 7, but "the Commerce Clause [does not] protect[] the particular structure or methods of operation in a retail market," Exxon, 437 U.S. at 127.

PPMC and other producers either already complied, or moved swiftly to comply, with Proposition 12 and are in a position to meet the confinement standards by January 1, 2022. While Niman Ranch already had pork raising practices in place that met the standards in Proposition 12, Coleman Natural Foods (also a brand owned by PPMC) has made the necessary conversions to its facilities, including the segregation of animals, and is working with producers to ensure they will be able to serve California customers with whole pork meat that complies with the standards set by Proposition 12. Oliviero Dec. ¶¶ 7, 9; see also Coleman Natural Foods, How is Coleman Natural Foods responding to the Proposition 12 (California) and Question 3 (Massachusetts) initiatives?, available at https://www.colemannatural.com/faqs/ (last accessed July 20, 2021) ("Coleman has product available that meets, and in some cases, exceeds California's Proposition 12 (The Farm Animal Confinement Initiative) . . . . This supply will dramatically increase over the coming months to meet demands of customers . . . ."). Likewise, Sioux-Preme® Packing Company (also a brand owned by PPMC) has prepared its packing facilities to segregate California compliant pork to the extent any of its producers require packing for California-bound pork after January 1, 2022. Oliviero Dec. ¶ 13.

There is no reason to believe that the rest of the pork industry's compliance with Proposition 12 should be any different. Indeed, it has not been, as evidenced by the fact that other major industry leaders have joined PPMC and announced their commitment to the confinement standards introduced by Proposition 12. See Oliviero Dec. ¶¶ 9-13. For example, Hormel Foods announced *nearly one year ago*, that it:

> confirmed that it faces no risk of material losses from compliance with Proposition 12. While Proposition 12 will add complexity to our supply chain, including costs associated with compliance, California is an important market for Hormel Foods and we will continue to meet the needs of our consumers and customers throughout the state.

Hormel Foods (Oct. 6, 2020), https://www.hormelfoods.com/newsroom/in-the-news/hormel-foods-company-information-about-california-proposition-12/. Hormel acknowledged "that California voters feel strongly about this issue and as a company that cares about its consumers, we will continue to work closely with our customers to ensure that our consumers in the state of California will still be able to purchase the Hormel Foods products that they depend upon." Id. Moreover, Vande Rose Farms, based in Waucoma, Iowa, describes itself as "a 21st Century Pork Company, extending that same tradition by leading the industry with more California Prop 12 supply chain options than any other Pork Producer. We also offer the highest animal welfare supply chain with GAP certified farms supported by Certified Humane 3rd party audit programs." LinkedIn, Vande Rose Farms, *available at* https://www.linkedin.com/company/vande-rose-farms (last accessed July 20, 2021); Oliviero Dec. ¶ 11; see also Coleman Natural Foods, How is Coleman Natural Foods responding to the Proposition 12 (California) and Question 3 (Massachusetts) initiatives?, *available at* https://www.colemannatural.com/faqs/ (last accessed July 20, 2021) ("Coleman has product available that meets, and in some cases, exceeds California's Proposition 12 (The Farm Animal Confinement Initiative) . . . . This supply will dramatically

increase over the coming months to meet demands of customers . . . ."); Lynne Curry, Could Crate-Free Pork become the New Industry Standard?, Civil Eats, Oct. 26, 2020, *available* at https://civileats.com/2020/10/26/could-crate-free-pork-become-the-new-industry-standard/ (discussing the efforts of Pennsylvania-based Clemens Food Group, one of the country's largest pork producers, to provide Proposition 12-complaint pork). Such announcements and actions make clear that Plaintiffs' concerns about widespread harm to the industry are self-serving and overblown.

To the extent that the price of Plaintiffs' whole pork meat products might increase, if California consumers choose to pay those higher prices in exchange for California-bound products that comply with humane standards for the confinement of breeding pigs, that is their choice. For all of these reasons, Proposition 12 does not substantially burden interstate commerce.

In any event, any burden imposed by Proposition 12 would not be "clearly excessive" in relation to the benefits of Proposition 12. The purpose of Proposition 12 was "to prevent animal cruelty by phasing out extreme methods of farm animal confinement." Prop. 12, § 2. Courts have repeatedly acknowledged that the prevention of animal cruelty is a legitimate state interest. See, e.g., United States v. Stevens, 559 U.S. 460, 469 (2010) ("[T]he prohibition of animal cruelty itself has a long history in American law, starting with the early settlement of the Colonies."); Church of the Lukumi Babalu Aye, Inc. v. City of Hialeah, 508 U.S. 520, 538 (1993); Eleveurs, 729 F.3d at 952. Whether Proposition 12 actually prevents cruelty to animals is immaterial.  It is sufficient that "the State believed the sales ban in California may discourage the consumption of products produced by" confining breeding pigs in conditions that do not satisfy Proposition 12.  Eleveurs, 729 F.3d at 952. Proposition 12 serves the same purpose, and courts "are not inclined 'to second-

guess the empirical judgments of lawmakers concerning the utility of legislation.'" <u>CTS Corp. v. Dynamics Corp. of Am.</u>, <u>481 U.S. 69, 92</u> (1987).

California's interests in preventing complicity in animal cruelty and protecting public health are sufficient to outweigh any burdens that Proposition 12 might impose. Accordingly, Plaintiffs' challenge to Proposition 12's pork sales ban fails at both steps of the <u>Pike</u> inquiry, and, therefore, this Court should deny the motion for a preliminary injunction.

## II. PLAINTIFFS CANNOT SHOW THAT THEY WILL SUFFER IRREPARABLE HARM IN THE ABSENCE OF INJUNCTIVE RELIEF.

In addition to not being able to show a likelihood of success on the merits, Plaintiffs also cannot show that they will suffer irreparable injury in the absence of injunctive relief. Fair competition cannot be the basis for irreparable harm <u>See, e.g.,</u> <u>Grand River Enters. Six Nations, Ltd.</u>, <u>481 F.3d at 67-68</u> (affirming district court finding that statute having the effect of raising plaintiff's prices to those "comparable to" others in the market does not demonstrate a likelihood of irreparable harm); <u>cf.</u> <u>Int'l Franchise Ass'n, Inc. v. City of Seattle</u>, <u>803 F.3d 389, 411</u> (9th Cir. 2015) (stating that "[a] rule putting plaintiffs at a competitive disadvantage constitutes irreparable harm."). The Eighth Circuit has acknowledged that "'economic loss does not, in and of itself, constitute irreparable harm,' and that 'revenues and customers lost to competition which can be regained through competition are not irreparable.'" <u>Iowa Utilities Bd. v. F.C.C.</u>, <u>109 F.3d 418, 426</u> (8th Cir. 1996) (citations omitted).

Proposition 12 is not unlike other animal welfare initiatives advanced by producers like PPMC or retailers like Whole Foods. The companies who chose to sell to Whole Foods incurred increased costs and were required to expend great effort to change the sequence and segregation of product destined for Whole Foods, which disrupted their processes and supply chains. Yet, the producers made those decisions because they wanted to compete for consumers who shop at Whole

Foods and who demand certain attributes for the products they purchase. Not every producer had the wherewithal or desire to compete for those consumers. The same is true with respect to consumers who demand natural products, raised domestically from family farmers and ranchers, with high animal welfare standards, and no antibiotics. See Oliviero Dec. ¶ 7. Retailers and producers are simply following consumer demands to produce what consumers want, some of whom are the voters who passed Proposition 12. The costs and efforts to compete for consumers in California does not equate to irreparable harm. Even if, arguendo, the initial costs were great, and supply and demand of pork products initially were to cause price fluctuations, the marketplace will normalize. Based upon laws of supply and demand, those who incur the additional cost and effort will be provided fair compensation. See Oliviero Dec. ¶¶ 7, 8.

## III. PLAINTIFFS CANNOT SHOW THAT THE BALANCE OF THE EQUITIES TIPS IN THEIR FAVOR OR THAT THE PUBLIC INTEREST FAVORS AN INJUNCTION.

When, as here, a movant seeks an injunction "against public institutions and against public servants charged with the enforcement of the law," the court "shall consider together the balancing of the equities required by test three and the question of whether the injunction would disserve the public interest, which is test four of the prerequisites for a preliminary injunction." Spiegel v. City of Houston, 636 F.2d 997, 1002 (5th Cir. 1981); see also Nken v. Holder, 556 U.S. 418 (2009) ("The third and fourth factors, harm to the opposing party and the public interest, merge when the Government is the opposing party.").

Even assuming Defendants' only legitimate interest is preventing animal cruelty, Plaintiffs have overestimated the harm that the Proposition 12 sales ban is causing, and will cause, out-of-producers, while underestimating the harm that granting an injunction would impose on Defendants. See Ass'n Des Éleveurs De Canards et D'Oies Du Québec v. Harris, No. 2:12-CV-05735-SVW-RZ, 2012 WL 12842942, at *11 (C.D. Cal. Sept. 28, 2012) ("Eleveurs I"), aff'd sub

13

nom. Ass'n des Eleveurs de Canards et d'Oies du Quebec v. Harris, 729 F.3d 937 (9th Cir. 2013);

see also Oliviero Dec. ¶ 7 ("While there is higher cost in meeting consumer demand for these types

of products, the investment pays dividends over the long run . . . ."). For example, Hormel Foods

has acknowledged publicly that any costs associated with compliance are outweighed by the

company's desire to continue to serve the California market and meet the needs of consumers. See

Hormel Foods (Oct. 6, 2020); see also Oliviero Dec. ¶ 10.

The public interest strongly favors California. Its voters have committed to consuming

natural products, raised domestically from family farmers and ranchers, with high animal welfare

standards, and no antibiotics. Their decision has been embraced by some retailers and many

producers who are not adverse to following consumer demands to produce what consumers want,

including the voters who passed Proposition 12. See Oliviero Dec. ¶¶ 5, 7, 9-13. "'[A]ny time a

State is enjoined by a court from effectuating statutes enacted by representatives of its people, it

suffers a form of irreparable injury.'" Maryland v. King, 567 U.S. 1301, 1303 (2012) (citation

omitted) (alteration in original); see also Turtle Island Foods, SPC v. Richardson, 425 F. Supp. 3d

1131, 1142 (W.D. Mo. 2019) ("[A]s the State notes, an injunction would cause it irreparable harm

because an injunction would invade its sovereign authority to enact and enforce its own laws."),

aff'd sub nom. Turtle Island Foods, SPC v. Thompson, 992 F.3d 694 (8th Cir. 2021). Proposition

12 "'is in itself a declaration of public interest' and by definition does not support the injunction."

Id. at 1141. Finally, Plaintiffs are unlikely to succeed on the merits of their dormant Commerce

Clause claim, and, therefore, Plaintiffs' claim that an injunction will serve the public interest "until

this Court can fully evaluate the constitutionality of California's grand experiment" is inapplicable.

See Eleveurs I, 2012 WL 12842942, at *11 (applying the same rationale to deny the preliminary

14

injection against California's ban on the sale of products resulting from the force-feeding of birds for the purpose of producing liver products).

Accordingly, the balance of the equities and the public interest weigh in favor of denying Plaintiffs' motion for a preliminary injunction.

## **CONCLUSION**

For the reasons set forth herein, PPMC respectfully requests that the Court deny Plaintiffs' Motion for a Preliminary Injunction.

Dated: July 20, 2021                                                   Respectfully submitted,

_____*/s/ Rockne Cole*_____
Rockne Cole
Cole Law Firm, PC
209 E. Washington Street, Suite 304
Iowa City, IA 52240
(319) 519-2540 (telephone)
(319) 359-4009 (facsimile)
rockne@colelawfirmiowa.com

Mitchell Y. Mirviss (*pro hac vice forthcoming*)
Venable LLP
750 East Pratt Street, Suite 900
Baltimore, MD 21202
(410) 244-7400 (telephone)
(410) 244-7742 (facsimile)
MYMirviss@venable.com

Roger A. Collaizzi (*pro hac vice pending*)
Venable LLP
600 Massachusetts Avenue, NW
Washington, DC 20001
(202) 344-4000 (telephone)
(202) 344-8300 (facsimile)
RACollaizzi@venable.com

*Attorneys for the Amicus Curiae*
*Perdue Premium Meat Company, Inc.,*
*d/b/a Niman Ranch*

## CERTIFICATE OF SERVICE

I hereby certify that on this 20th day of July, 2021, I served via the Court's CM/ECF system a true and correct copy of the foregoing **MEMORANDUM OF *AMICUS CURIAE* PERDUE PREMIUM MEAT COMPANY, INC. D/B/A NIMAN RANCH IN OPPOSITION TO PLAINTIFFS' MOTION FOR PRELIMINUARY INJUNCTION** on all parties.

_____/s/ Rockne Cole_____
Rockne Cole