**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF IOWA**
**CENTRAL DIVISION**

| | |
|---|---|
| IOWA PORK PRODUCERS ASSOCIATION, LINN VALLEY PIGS, LLP, TWIN PRAIRIE PORK, LLC, NEW GENERATION PORK, INC, | No. 21-CV-3018-CJW-MAR |
| Plaintiffs, | |
| vs. | **ORDER** |
| ROB BONTA, in his official capacity as Attorney General of California, KAREN ROSS, in her official capacity as Secretary of the California Department of Food and Agriculture, and TOMAS ARAGON, in his official capacity as Director of the California Department of Public Health, | |
| Defendants. | |

_____

**TABLE OF CONTENTS**

I.    INTRODUCTION ............................................................................. 3

II.   FACTUAL BACKGROUND ............................................................. 3

      A.    Parties .................................................................................. 3

      B.    Proposition 12: Background, Status, and Impact ............................ 4

III.  PROCEDURAL BACKGROUND ...................................................... 6

IV.   MOTION TO DISMISS .................................................................... 7

      A.    Personal Jurisdiction............................................................... 8

            1.    Applicable Law ........................................................... 8

1

2.     Discussion.................................................................12

     a.    Quantity, Quality, and Relatedness of Defendants' Contacts with Iowa .......................................................12

     b.    Calder Effects Test .............................................15

          i.    Intentional Act ..........................................16

          ii.    Uniquely or Expressly Aimed at Iowa................17

          iii.    Caused Harm in Iowa ...................................18

     c.    Iowa's Interest in Providing a Forum and the Convenience of the Parties .....................................................19

     d.    Reasonableness.................................................20

     e.    Conclusion......................................................21

B.    Venue ...................................................................22

    1.    Applicable Law ......................................................22

    2.    Discussion..............................................................23

C.    Subject Matter Jurisdiction, Standing, and Transfer .........................24

D.    Conclusion ...............................................................24

V.    MOTION FOR PRELIMINARY INJUNCTION ....................................24

VI.    MOTION TO STAY.............................................................25

VII.    CONCLUSION.................................................................26

Case 3:21-cv-03018-CJW-MAR   Document 67   Filed 08/23/21   Page 2 of 26

# I. INTRODUCTION

This matter is before the Court on three separate motions. First, this matter is before the Court on defendants' Motion to Dismiss Plaintiffs' Amended Petition. (Doc. 10). Plaintiffs timely filed a resistance (Doc. 28) and defendants timely filed a reply (Doc. 33). Second, this matter is before the Court on plaintiffs' Motion for Preliminary Injunction. (Doc. 13). Defendants timely filed a resistance (Doc. 36) and plaintiffs filed a timely reply (Doc. 51). Third, this matter is before the Court on defendants' Motion to Stay Resolution of Plaintiffs' Motion for a Preliminary Injunction. (Doc. 19). Plaintiffs also timely resisted the motion for a stay. (Doc. 20). On August 13, 2021, the parties presented oral argument on the three motions, with a particular emphasis on the motion to dismiss and the motion for a preliminary injunction. (Doc. 65).

For the following reasons defendants' motion to dismiss (Doc. 10) is **granted**. Plaintiffs' motion for a preliminary injunction (Doc. 13) is **denied as moot**. Defendants' motion for a stay (Doc. 19) is also **denied as moot**.

# II. FACTUAL BACKGROUND

Plaintiffs brought suit here under Title 42, United States Code, Section 1983 claiming a violation of their constitutional rights as a result of the passage and enforcement of California's Proposition 12 Farm Animal Confinement Initiative ("Proposition 12"). The following background facts are based on plaintiffs' amended complaint, which the Court accepts as true for purposes of the motions at issue here.

## A. Parties

Iowa Pork Producers Association ("IPPA") is a "grassroots organization" that "serves as a unified voice for its Iowa pork producer members." (Doc. 4, at 7). IPPA "consists of approximately 70 structured county associations across [Iowa], with more than 4,000 affiliated and associate members." (*Id.*). Linn Valley Pigs LLP ("Linn Valley Pigs") is an Iowa limited liability partnership with its home office in Jones County, Iowa.

(*Id.*). Twin Prairie Pork, LLC ("Twin Prairie Pork") is an Iowa limited liability company with its home office in Clayton County, Iowa. (*Id.*). New Generation Pork, Inc. ("New Generation Pork") is an Iowa corporation with its home office in Clayton County, Iowa. (*Id.*). Linn Valley Pigs, Twin Prairie Pork, and New Generation Pork all operate sow gestation and farrowing farms in Iowa, and all assert they have supplied pork that is sold into California and expect to continue to supply pork that is sold into California in the future. (*Id.*).

Rob Bonta ("Bonta") is the Attorney General of the State of California. (*Id.*). Karen Ross ("Ross") is the Secretary of the California Department of Food and Agriculture. (*Id.*, at 8). Tomas Aragon ("Aragon") is the Director of the California Department of Public Health. (*Id.*). Bonta, Ross, and Aragon are sued in their official capacities only. (*Id.*, at 7–8).

### B.    *Proposition 12: Background, Status, and Impact*

The California law at issue here is Proposition 12, but to properly understand the law's purpose, status, and potential impact, additional historical context is useful. In 2008, California voters passed an initial resolution, Proposition 2, via a ballot initiative. (*Id.*, at 8). Proposition 2 imposed "turn around requirements" on California pork producers that required sows in California be housed so they could "turn around freely, lie down, stand up, and fully extend their limbs." (*Id.*). Proposition 2 went into effect on January 1, 2015, and also applied "turn around requirements" to egg-laying hens and veal calves. (*Id.*, at 9). After Proposition 2 went into effect, the California Legislature passed an additional bill, Assembly Bill 1437, that required the turn around requirements be applied to out-of-state egg producers as well. Assembly Bill 1437 accomplished this by prohibiting the sale of eggs in California laid by hens held in confinements that did not comply with Proposition 2. (*Id.*). Assembly Bill 1437 did not apply to pork meat from outside of California. (*Id.*).

4

On November 6, 2018, California voters passed Proposition 12. (*Id.*, at 11). In part, Proposition 12 essentially extended Assembly Bill 1437 to pork meat originating outside California. Namely, Proposition 12 "prohibit[s] the sale of any whole pork meat where the business owner or operator knows or should know is the meat of a breeding pig, or the immediate offspring of a breeding pig, who was confined 'in a cruel manner.'" (*Id.*). Proposition 12 further defines "in a cruel manner" as "confining a breeding pig after December 31, 2021, if that breeding pig is in a space less than twenty-four (24) square feet of usable floorspace per pig." (Doc. 13, at 4). Thus, plaintiffs assert the turn around provisions may already be in effect for all pork meat sold in California, but the 24 square foot restrictions will take effect on January 1, 2022. (Doc. 4, at 12). In terms of enforcement, Proposition 12 states that any person who violates Proposition 12 is guilty of a misdemeanor and can face penalties of up to a $1,000 fine and 180 days imprisonment. (*Id.*, at 11). Plaintiffs also allege that Proposition 12 categorizes the selling of non-compliant pork meat as an unfair business practice, subjecting violators to a $2,500 fine per violation. (*Id.*). Plaintiffs assert that as of the date of their filing, California has not published any draft regulations for public hearing or promulgated any rules and regulations for implementing Proposition 12. (*Id.*, at 12).

Plaintiffs allege Proposition 12 will, for several reasons, have a deleterious effect on hog farmers, the California and national pork market, and the animals themselves. Sows are typically housed in indoor confinements specially designed for breeding. (*Id.*, at 13). The confinements are designed to increase efficiency, to keep the sows safe, and to prevent the spread of disease. (*Id.*). According to plaintiffs, changing or reconstructing the sow confinements will be expensive, overly burdensome, and impossible to complete before the 24 square foot requirement takes effect. (*Id.*, at 15). Plaintiffs also assert the 24 square foot requirement will negatively affect the sows because the current structures are designed to keep them safe, lower their stress levels,

and help them recover from birthing and weaning through individualized nutrition and attention. (*Id.*, at 13–14). Last, plaintiffs assert it will cost approximately $15-23 more per hog to comply with Proposition 12, which will lead to increased prices for a significant and important protein source. (*Id.*).

### III. PROCEDURAL BACKGROUND

On May 20, 2021, plaintiffs filed their petition for declaratory and injunctive relief in the Iowa District Court in and for Franklin County. (Doc. 3). On May 24, 2021, plaintiffs filed their amended petition for declaratory and injunctive relief, also in the Iowa District Court in and for Franklin County. (Doc. 4). In their amended complaint, plaintiffs raised several claims, all under Title 42, United States Code, Section 1983, including: 1) violation of the commerce clause; 2) violation of the due process clause as a facial challenge; 3) violation of the due process clause for failure to promulgate the rules as mandated; 4) violation of the privileges and immunities clause; 5) preemption by the Packers and Stockyards Act; and 6) violation of the equal protection clause. (*Id.*). Plaintiffs requested a preliminary and permanent injunction prohibiting defendants from enforcing Proposition 12, a judgment declaring Proposition 12 unconstitutional, and attorney fees and costs. (*Id.*, at 31–32). On June 18, 2021, defendants removed the action to this Court under Title 28, United States Code, Section 1441(a).

On June 25, 2021, defendants filed a motion to dismiss plaintiffs' amended petition under Federal Rules of Civil Procedure 12(b)(1), (2), and (3). Several days later, on June 29, 2021, plaintiffs filed a motion for a preliminary injunction. (Doc. 13). Plaintiffs requested expedited relief and a hearing on their motion. (*Id.*). In response, defendants filed a motion to stay resolution of plaintiffs' motion for a preliminary injunction. Defendants argued that its motion to dismiss is based on jurisdictional grounds that directly implicate the Court's authority to enter plaintiffs' requested relief. (Doc. 19, at 1). Thus, defendants requested that the Court first decide the jurisdictional issues before

ruling on the merits of plaintiffs' request. Resistances and replies were filed in response to each of the motions.

On July 9, 2021, the Court entered an order holding in abeyance its ruling on defendants' motion to stay. (Doc. 25). In the same order the Court instructed the parties to contact the Court to set a hearing date for all three motions. (*Id.*, at 2–3). The parties complied and a hearing date was set for August 13, 2021. The Court heard oral arguments on August 13, 2021. (Doc. 65).

Also, on July 20, 2021, and July 23, 2021, Niman Ranch and the Association of California Egg Farmers each respectively filed motions for leave to file amicus briefs. After receiving notice that no party objected to the motions, the Court granted the requests and the amicus briefs were docketed. (Docs. 57 & 59).

## IV. MOTION TO DISMISS

Defendants move to dismiss plaintiffs' claims under Federal Rules of Civil Procedure 12(b)(1), (2), and (3). "[I]n cases removed from state court to federal court, as in cases originating in federal court, there is no unyielding jurisdiction hierarchy." *Ruhrgas AG v. Marathon Oil Co.*, 526 U.S. 574, 578 (1999); *see also Federated Mut. Ins. Co. v. FedNat Holding Co.*, 928 F.3d 718, 720 (8th Cir. 2019); *Erwin-Simpson v. AirAsia Berhad*, 985 F.3d 883, 888 (D.C. Cir. 2021). When "a district court has before it a straightforward personal jurisdiction issue presenting no complex questions of state law, and the alleged defect in subject-matter jurisdiction raises a difficult and novel question, the court does not abuse its discretion by turning directly to personal jurisdiction." *Ruhrgas AG*, 526 U.S. at 588.

Here, although the parties present well-argued points, the personal jurisdiction issue is relatively straightforward. Indeed, the factors courts consider in analyzing personal jurisdiction are well established and clearly articulated. The Court is well equipped to apply the factual allegations to the factors and conduct a thorough analysis.

The question of subject matter jurisdiction, however, raises more difficult questions. In evaluating subject matter jurisdiction here, the Court is required to consider questions of sovereign immunity and more specifically, whether the *Ex parte Young* exception for prospective injunctive relief applies. *Ex parte Young* only applies to government officials who have "some connection to the enforcement of the challenged laws," but a general enforcement power is not enough. *See Church v. Missouri*, 913 F.3d 736, 748 (8th Cir. 2019). To determine whether defendants have the necessary amount of enforcement power requires the Court to look at the California Constitution, the statutory language of Proposition 12 and other California statutes, the California Health and Safety Code, and the California Business and Professional Code. (Docs. 10-1, at 15–16; 26-1, at 6–8). Interpreting California laws and regulations and applying them to the officials' conduct and responsibilities here raises more difficult questions than the more straightforward personal jurisdiction analysis.

For these reasons, the Court will first consider defendants' Rule 12(b)(2) argument and whether the Court has personal jurisdiction over defendants. The Court will then turn to whether venue is proper in the Northern District of Iowa.

### A. *Personal Jurisdiction*

#### 1. *Applicable Law*

"Jurisdiction to resolve cases on the merits requires both authority over the category of claim in suit (subject-matter jurisdiction) and authority over the parties (personal jurisdiction), so that the court's decision will bind them." *Ruhrgas AG*, 526 U.S. at 577. Thus, a court must have personal jurisdiction over the parties before it can resolve a case. *Lightfoot v. Cendant Mortg. Corp.*, 137 S. Ct. 553, 562 (2017). A defendant can raise a court's lack of personal jurisdiction by pre-answer motion. FED. R. CIV. P. 12(b)(2). The plaintiff bears the burden of making a prima facie showing that the court has personal jurisdiction over the defendant. *K-V Pharm. Co. v. J. Uriach &*

*CIA, S.A.*, 648 F.3d 588, 591 (8th Cir. 2011). Courts consider the pleadings as well as affidavits and exhibits in determining if a plaintiff has made a prima facie showing of personal jurisdiction. *Id.* at 591–92. "The evidentiary showing required at the prima facie stage is minimal." *Johnson v. Arden*, 614 F.3d 785, 794 (8th Cir. 2010) (alteration omitted) (quoting *Willnerd v. First Nat'l Neb., Inc.*, 558 F.3d 770, 778 (8th Cir. 2009)). The "prima facie showing," however, "must be tested, not by the pleadings alone, but by the affidavits and exhibits presented with the motions and in opposition thereto." *Block Indus. v. DHJ Indus., Inc.*, 495 F.2d 256, 260 (8th Cir. 1974). Plaintiffs have the burden of offering sufficient facts to support a reasonable inference that a defendant can be subjected to the Court's jurisdiction in the forum state. *Id.* at 259. In ruling on a motion to dismiss for lack of personal jurisdiction courts "must view the evidence in the light most favorable to the plaintiff and resolve all factual conflicts in its favor in deciding whether the plaintiff made the requisite showing." *K-V Pharm.*, 648 F.3d at 592.

For a district court to properly assert jurisdiction over a nonresident defendant the court "must determine [if] personal jurisdiction exists under the forum state's long-arm statute and [if] the exercise of personal jurisdiction is consistent with due process." *Wells Dairy, Inc. v. Food Movers Int'l, Inc.*, 607 F.3d 515, 518 (8th Cir. 2010). Iowa's long-arm statute authorizes personal jurisdiction to the fullest extent allowed by the United States Constitution, so the Court need only analyze whether exercising personal jurisdiction comports with due process. *Creative Calling Sols., Inc. v. LF Beauty Ltd.*, 799 F.3d 975, 979 (8th Cir. 2015). "Due process requires that a defendant have certain 'minimum contacts' with the forum State for the State to exercise specific jurisdiction." *Id.* at 980 (citing *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 291 (1980)). Once a plaintiff has established that the defendant has minimum contacts with the forum state, the court must consider the contacts "in light of other factors to determine whether the assertion of personal jurisdiction would comport with 'fair play and substantial

justice.'" *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 476 (1985) (quoting *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 320 (1945)); *see also Creative Calling Sols.*, 799 F.3d at 981–82 ("Even where a party has minimum contacts with a forum, jurisdiction can still be unreasonable. The Due Process Clause forbids the exercise of personal jurisdiction under circumstances that would offend traditional notions of fair play and substantial justice." (citations and internal quotation marks omitted)).

"General jurisdiction," which allows the court to hear any claim against the defendant, exists when the defendant has "continuous and systematic" contacts with the forum state which render the defendant "essentially at home in the forum state." *Creative Calling Sols., Inc.*, 799 F.3d at 979 (quoting *Daimler AF v. Bauman*, 571 U.S. 117, 127 (2014)). Thus, when a court has general personal jurisdiction over the defendant it need not assess personal jurisdiction as to each claim. Here, the parties agree this Court lacks general jurisdiction over defendants, so the Court will not analyze whether it has general jurisdiction over defendants. (Doc. 26-1, at 10).

Instead, plaintiffs assert that this Court has "specific jurisdiction" over defendants. (*Id.*, at 10–11). "'Specific jurisdiction,' . . . is proper when a defendant has certain contacts with the forum State and the cause of action arises out of those contacts." *Creative Calling Sols.*, 799 F.3d at 979–80. "Because [the specific jurisdiction] analysis depends on the relationship between the claims and contacts, [courts] generally evaluate specific jurisdiction on a claim-by-claim basis." *Marten v. Godwin*, 499 F.3d 290, 296 (3d Cir. 2007); *see also Grynberg v. Ivanhoe Energy, Inc.*, 490 Fed. App'x 86, 93 n.4 (10th Cir. 2012); *Phillips Exeter Acad. v. Howard Phillips Fund*, 196 F.3d 284, 289 (1st Cir. 1999); 16 MOORE'S FEDERAL PRACTICE – CIVIL § 108.42[1] (3d ed. 2019) ("Several circuits have taken the view that the determination of specific personal jurisdiction is a claim-specific inquiry."). Here, however, each claim is based on a common issue and all of plaintiffs' claims are raised under Section 1983, so the Court finds it appropriate

to consider the claims together and need not evaluate on a claim-by-claim basis. Similarly, "each defendant's contacts with the forum must be assessed individually." *Select Comfort Corp. v. Kittaneh*, 161 F. Supp. 3d 724, 731 (D. Minn. 2014) (quoting *Keeton v. Hustler Magazine, Inc.*, 465 U.S. 770, 781 n.13 (1984)). Here, though, plaintiffs have sued defendants in their official capacities, which constitutes a claim against the state, making it unnecessary to assess each defendants' contacts with Iowa. *See Will v. Mich. Dept. of State Police*, 491 U.S. 58, 71 (1989) (holding that "a suit against a state official in his or her official capacity is not a suit against the official but rather is a suit against the official's office . . . [and] [a]s such, it is no different from a suit against the State itself.").

The Eighth Circuit Court of Appeals has adopted a five-factor test to determine if a defendant has sufficient minimum contacts with the forum state and whether the exercise of personal jurisdiction comports with due process. *Whaley v. Esebag*, 946 F.3d 447, 452 (8th Cir. 2020). The five factors are: "(1) the nature and quality of contacts with the forum state; (2) the quantity of such contacts; (3) the relation of the cause of action to the contacts; (4) the interest of the forum state in providing a forum for its residents; and (5) convenience of the parties." *Id.* (quoting *Burlington Indus., Inc. v. Maples Indus., Inc.*, 97 F.3d 1100, 1102 (8th Cir. 1996)) (internal quotation marks omitted). The first two factors of the test address the minimum contacts portion of the personal jurisdictional analysis. *Pope v. Elabo GmbH*, 588 F. Supp. 2d 1008, 1018 (D. Minn. 2008). The third factor differentiates between specific and general jurisdiction. *Burlington*, 97 F.3d at 1102. The fourth and fifth factors address other considerations, in addition to minimum contacts, that affect the reasonableness of a court exercising personal jurisdiction. *See Pope*, 588 F. Supp. 2d at 1018. "The fourth and fifth factors 'carry less weight and are not dispositive.'" *Whaley*, 946 F.3d at 452 (quoting *Downing v. Goldman Phipps, PLLC*, 764 F.3d 906, 912 (8th Cir. 2014)).

11

In assessing personal jurisdiction over tort claims the Eighth Circuit Court of Appeals applies the same five-factor test for jurisdiction, but also considers the "effects" test set forth in *Calder v. Jones*, 465 U.S. 783 (1984).[1] *Johnson*, 614 F.3d at 796–97; *see also Dakota Indus., Inc. v. Dakota Sportswear, Inc.*, 946 F.2d 1384, 1391 (8th Cir. 1991) ("In relying on *Calder,* we do not abandon the five-part test of *Land O'Nod* [*Co. v. Bassett Furniture Indus.*, 708 F.2d 1338 (8th Cir. 1983)]. We simply note that *Calder* requires the consideration of additional factors when an intentional tort is alleged."); *Lindgren v. GDT, LLC*, 312 F. Supp. 2d 1125, 1132 (S.D. Iowa 2004) ("The Eighth Circuit has used the Calder test merely as an additional factor to consider when evaluating a defendant's relevant contacts with the forum.").

### 2.   Discussion

#### a.   *Quantity, Quality, and Relatedness of Defendants' Contacts with Iowa*

Of the five factors courts use to determine whether a defendant has sufficient contacts to establish personal jurisdiction, the first three are the most important. *See, e.g.*, *Digi-Tel Holdings, Inc. v. Proteq Telecomms., Ltd.*, 89 F.3d 519, 523 (8th Cir. 1996).

The first factor of the five-factor test—the nature and quality of defendants' contacts with the forum state—differentiates between "random, fortuitous, and attenuated contacts that cannot justify the exercise of personal jurisdiction," *Viasystems, Inc. v. EBM-Papst St. Georgen GmbH & Co.*, 646 F.3d 589, 594 (8th Cir. 2011), and purposeful contacts with the forum that justify personal jurisdiction, *see Rural Media Grp., Inc. v.*

---

[1] The United States Supreme Court has clarified that Section 1983 claims sound in tort and thus, the Court will treat the claims as such here. *City of Monterey v. Del Monte Dunes at Monterey, Ltd.*, 526 U.S. 687, 709 (1999) ("[T]here can be no doubt that claims brought pursuant to [Section] 1983 sound in tort. Just as common-law tort actions provide redress for interference with protected personal or property interests, [Section] 1983 provides relief for invasions of rights protected under federal law.").

Case 3:21-cv-03018-CJW-MAR   Document 67   Filed 08/23/21   Page 12 of 26

*Performance One Media, LLC*, 697 F. Supp. 2d 1097, 1111 (D. Neb. 2010). The second factor measures the quantity of contacts, but where the plaintiff alleges specific jurisdiction, "the quantity of contacts is not determinative because a single contact with the forum state can give rise to specific jurisdiction." *Shine Bros. Corp. v. Am. Int'l Grp.*, 108 F. Supp. 3d 651, 668 (N.D. Iowa 2015) (citation and internal quotation marks omitted).

Defendants argue that they "have no contacts with the forum state[.]" (Doc. 10-1, at 19). Specifically, defendants argue: California is not an Iowa resident, is not physically in Iowa, and has not consented to suit in Iowa related to the actions here; there are no alleged facts connecting California to Iowa; there are no allegations that defendant ever wrote or communicated with anyone in Iowa; there are no facts that defendants took any actions in Iowa; and that defendants have not purposefully availed themselves of the privileges of conducting activities in Iowa or invoked the protection of Iowa laws. (*Id.*, at 19–20).

Plaintiffs argue that, in addition to tortiously aiming Proposition 12 at Iowa, California "has 'purposefully availed' itself to Iowa's pork market" because California could not satisfy its own demand for pork consumption without Iowa's pork production. (Doc. 26-1, at 16). Because California cannot satisfy its own demand for pork consumption, it has deliberately "reached beyond its home" and into Iowa. (*Id.*).

The Court finds the nature, quality, and quantity of defendants' contacts with Iowa do not support the Court exercising personal jurisdiction over plaintiffs' claims for several reasons. First, as will be more thoroughly discussed below as it relates to the *Calder* effects test, the Court finds that defendants have not tortiously aimed Proposition 12 at Iowa. Second, defendants are not Iowa residents, are not physically present in Iowa, and have not consented to suit in Iowa. Also, there are no alleged facts the defendants ever wrote to or communicated with anyone in Iowa, had bank accounts in Iowa, or owned or

operated facilities or offices in Iowa. *See, e.g.*, *Morningside Church Inc. v. Rutledge*, No. 20-2954, 2021 WL 3556096, at *4 (8th Cir. Aug. 12, 2021) (finding that even letters and communications sent to plaintiffs in forum state did not establish personal jurisdiction when there was no broader effort to make a connection with the forum state). At oral argument, plaintiffs asserted that in the future, representatives from California may come to Iowa to inspect farms to ensure compliance with Proposition 12. Plaintiffs' assertion, at this point, is speculation. There is no evidence that representatives have come to Iowa or that it is reasonably likely they will come to perform the inspections in person. Thus, the Court is not persuaded by the speculative possibility of future physical presence. In short, there is no evidence of any sort of physical presence in Iowa.

In its resistance, however, plaintiffs also assert that defendants purposefully availed themselves to Iowa's pork market. (Doc. 26-1, at 14). Specifically, plaintiffs argue defendants purposefully availed themselves to Iowa by relying on Iowa pork to help meet its own consumer demand for pork consumption and to satisfy several state contracts for pork meat in California prisons and schools. (*Id.*). The Court finds general purchasing of goods that have entered the stream of commerce is insufficient to establish personal jurisdiction. Finding otherwise would open consumers to lawsuits in any jurisdiction, so long as they had purchased a product in the stream of commerce, the lawsuit was in some way related to the product, and the general product can be produced in the jurisdiction. Further, the fact that some private citizens in California could enter into contracts with pork producers in Iowa does not expose the State of California to liability. Here, there are no facts or allegations that defendants specifically sought to purchase Iowa pork or entered contracts with plaintiffs to supply pork to California. Nor are there allegations defendants differentiated Iowa pork from pork that originated elsewhere and the fact that Iowa happens to be a major pork producing state is merely fortuitous in meeting their demand.

Plaintiffs allege that Linn Valley Pigs, Twin Prairie Pork, and New Generation Pork all produced pork that was sold into California. (Doc. 4, at 7). But plaintiffs do not allege they sold pork meat specifically to defendants. Their pork meat may have ended up in California through ordinary channels of commerce, but there was nothing specifically directed at or from California. Plaintiffs' general allegation that defendants purchased pork meat, some of which originated in Iowa, is insufficient to show defendants purposefully availed itself to Iowa. Having found there were no meaningful contacts with Iowa when defendant purchased pork, the Court cannot find the contacts were related to the claims.

Thus, the nature, quality, quantity, and relatedness of defendants' contacts with Iowa do not support a finding that sufficient minimum contacts exist such that exercise of personal jurisdiction over Iowa would comport with due process.

### b. *Calder Effects Test*

The *Calder* effects test provides that

> a defendant's tortious acts can serve as a source of personal jurisdiction only where the plaintiff makes a prima facie showing that the defendant's acts (1) were intentional, (2) were uniquely or expressly aimed at the forum state, and (3) caused harm, the brunt of which was suffered-and which the defendant knew was likely to be suffered-[in the forum state].

*Johnson*, 614 F.3d at 796 (8th Cir. 2010) (alteration in original) (quoting *Lindgren*, 312 F. Supp. 2d at 1132). The Eighth Circuit Court of Appeals construes the *Calder* effects test narrowly, and "absent additional contacts, mere effects in the forum state are insufficient to confer personal jurisdiction." *Id.* at 797.

Since *Calder*, the Supreme Court has clarified its "effects" analysis in two ways. *See Walden v. Fiore*, 571 U.S. 277, 284–86 (2014). "First, the relationship [between the defendant and the forum state] must arise out of contacts that the 'defendant himself' created with the forum state. Second, [courts] look to the defendant's contacts and

conduct with the forum state *itself*, not the defendant's contacts with persons who reside there." *Whaley*, 946 F.3d at 451 (quoting *Walden*, 571 U.S. at 284).

Defendants make several arguments relating to the *Calder* effects test. First, defendants argue that Proposition 12 "is intended to protect farm animals from cruel confinement" and thus, any harm plaintiffs may have suffered as a result was not intentional. (Doc. 10-1, at 21). Second, defendants argue that even though plaintiffs "may feel effects of Proposition 12 in Iowa," there is no evidence the law targeted Iowa or was directed at plaintiffs. (*Id.*). Third, defendants assert plaintiffs "cannot credibly allege that California's acts caused, or will cause, harm, the brunt of which will be suffered . . . in Iowa." (*Id.*, at 23).

### i.     *Intentional Act*

Defendants do not deny that California intentionally passed Proposition 12 but asserts that any harm plaintiffs incurred was not intentional. (Doc. 10-1, at 21). Plaintiffs assert Proposition 12 was an intentional act because it was deliberately passed and had clear implications on out-of-state pork producers. (Doc. 26-1, at 13).

There is no dispute that California intentionally passed Proposition 12. It is well documented that voters were given advance notice of the proposed law, could educate themselves on the issues involved, and that they in fact voted in favor of Proposition 12. It is also likely that, given the language of the bill, Californians knew Proposition 12 would impose confinement requirements on out-of-state producers wishing to sell their pork in California and thus, the law was passed "for the very purpose of having their consequences felt" in other states. *Johnson v. Arden*, 614 F.3d 785, 796 (8th Cir. 2010). In that sense, Proposition 12 was intentional. There is no evidence, however, that defendants intentionally acted tortiously or intentionally harmed anyone. The collateral effects of passing the law may be that Iowa farmers are harmed, but there is nothing that indicates this harm was intentional. Even if plaintiffs satisfied the intentional act prong,

16

the California law was not uniquely or expressly aimed at Iowa and the brunt of the harm was not felt there.

### ii.       *Uniquely or Expressly Aimed at Iowa*

For the second element of the effects test, the Court must determine if defendants' actions were uniquely or expressly aimed at Iowa.

The Court finds defendants' actions were not expressly aimed at Iowa. Nothing in Proposition 12 names Iowa, nor is Iowa singled out in any way. Instead, Proposition 12's requirements apply to pork sold from hog farms in any state, anywhere in the country. A law's requirements that apply equally to each state cannot be said to be aimed expressly at one. The analysis might be different if Iowa were the only pork producing state in the country, in which case even though Proposition 12 applied to each state, its impact would only be felt in Iowa. That is not the case here. The Court is unaware of the exact number of states that produce pork, but it would not be surprised if a majority of the states produce at least some pork. At the very least, plaintiffs' amended complaint admits pork is produced in other states as well. *See* (Doc. 4, at 2). The stated purposes are to protect the health of Californians and to protect farm animals from cruel confinement. These objectives can only be accomplished when they apply to all pork producers. Thus, the law's purposes do not support a finding that it was expressly aimed at Iowa.

The question of whether Proposition 12 is uniquely aimed at Iowa requires a slightly different analysis. Although the law is not expressly aimed at Iowa, Iowa does maintain a unique position in the pork market. According to plaintiffs, nearly one-third of the nation's hogs are raised in Iowa, which is more than twice the amount of the second highest pork-producing state. (Doc. 4, at 2). Because Iowa produces such a high percentage of hogs, it is possible that even though other states also produce hogs, the law is uniquely aimed at Iowa. The Court does not find that to be the case here. Again,

there is nothing in the language of the law or its stated purpose that indicates this is aimed at Iowa. Plaintiffs have not alleged, for example, that only Iowa farmers confine hogs in a manner that would violate Proposition 12. Also, the Court is unaware of any case stating what market share of an industry a state must possess before it is uniquely positioned. It is true one-third is a significant portion of the pork industry, but it is still well below having a majority of the pork. Thus, although large, the market share is not so significant that it puts Iowa in a unique position such that it would be the only state targeted by Proposition 12.

Thus, the Court finds Proposition 12 is not uniquely or expressly aimed at Iowa, the forum state.

### iii.     *Caused Harm in Iowa*

Finally, the Court must determine whether defendants caused plaintiffs harm knowing that the brunt of the harm would be felt in Iowa.

As stated above, plaintiffs allege Iowa produces a third of the nation's pork, which is more than double the amount produced by the second most pork-producing state. That does not necessarily mean the brunt of the harm will be felt in Iowa. There is no evidence that the "'focal point' of the act, i.e., where the 'brunt' of the harm is intended" is in Iowa. As stated above, Proposition 12 applies generally to pork production without regard to the state of origin and the fact that Iowa produces the most pork in the country is merely fortuitous. Proposition 12 does not make Iowa its focal point or direct the harm at Iowa. That one third of the pork produced in the United States is produced in Iowa necessarily means that two thirds of the nation's pork is not produced in Iowa. Further, those figures tell the Court nothing about what proportion of that pork ends up in California. It may very well be that 100% or some other high proportion of the pork imported into California is sourced from pork producers in Iowa. If that were the case, then plaintiffs could plausibly argue that the burden falls uniquely on Iowa. No evidence

18

of that is in the record, however, and such a circumstance has not been alleged. It could also be the case that a greater percentage of hogs come from states that, although they produce fewer hogs than Iowa, are geographically closer to California and thus sell more hogs to California customers. Plaintiffs have simply not alleged any facts that would permit the Court to draw any conclusion about whether Iowa farmers feel the brunt of Proposition 12. Indeed, in urging the need for a preliminary injunction plaintiffs argued that once Iowa farmers sell their hogs there is no way to track them in the stream of commerce and thus Proposition 12 could arguably subject Iowa farmers to criminal liability. But that same argument also shows that plaintiffs cannot establish that Iowa farmers uniquely feel the brunt of Proposition 12. Put another way, most of the harm caused by Proposition 12 occurs outside of Iowa. Although the harm caused in Iowa will likely be more concentrated due to the proportion of pork produced in Iowa as compared to other states, the Court finds that this does not constitute the brunt of the harm caused by the statute as *in toto*.

Thus, the Court finds the brunt of the harm did not occur in Iowa.

### c. *Iowa's Interest in Providing a Forum and the Convenience of the Parties*

With respect to the final two factors, "[Iowa] has an obvious interest in providing a local forum in which its residents may litigate claims against non-residents." *RELCO Locomotives, Inc. v. AllRail, Inc.*, 4 F. Supp. 3d 1073, 1084 (S.D. Iowa 2014). Defendants do not contest that Iowa has an interest in deciding plaintiffs' claims, only that the state of Iowa's general interest in providing a forum to help protect Iowa residents from damage does not outweigh the other primary factors. (Doc. 10-1, at 23). Despite there being other possible interests at issue, there is no disagreement that Iowa has an interest in providing a forum in which its residents may litigate claims and thus, the fourth factor weighs slightly in plaintiffs' favor.

19

As to the convenience of the parties, the Court notes that "litigation between citizens of different states will virtually always result in an inconvenience to one party or the other." *Int'l Adm'rs, Inc. v. Pettigrew*, 430 F. Supp. 2d 890, 898 (S.D. Iowa 2006). When the burden would be the same on either party if forced to litigate outside its home forum, the fifth factor does not weigh in favor of either party. *Id.* Here, defendants state that if they are forced to litigate in Iowa courts it will not only inconvenience them, but will also "hamper[ ] the administration of government of the State of California." (Doc. 10-1, at 25). Other than the public nature of their positions, defendants do not explain how they will be specifically burdened beyond the general inconveniences of litigating in a different state. Plaintiffs argue this factor is largely neutral, but may tip in favor of plaintiffs because defendants acted intentionally and aimed their conduct at Iowa. (Doc. 26-1, at 17).

The Court finds the fifth factor is neutral and does not clearly favor either party. The concerns generally apply equally to plaintiffs if plaintiffs were forced to litigate in California as they apply to California defendants being forced to litigate in Iowa. The Court places some significance on defendants' argument that there is a public administration interest in not requiring defendants to litigate in Iowa. But defendants also have staff and resources to help them with the litigation which minimizes the interruption of defendants' work. Also, due to COVID-19 concerns it is unclear how much travel would be feasible and much of the litigation, including the August 13, 2021 hearing, can be conducted remotely. Thus, the fifth factor does not favor either party in the Court's analysis.

### d. *Reasonableness*

Even when other minimum contacts have been established, exercising personal jurisdiction may still be unreasonable. *Creative Calling Sols.*, 799 F.3d at 981–82. Indeed, "whether personal jurisdiction exists in a given case 'involves applying principles

of fairness and reasonableness to a distinct set of facts[.]'" *Viasystems, Inc.*, 646 F.3d at 596.

The Court already found that the minimum contacts have not been established that would justify exercising personal jurisdiction here. Even if plaintiffs had established the necessary contacts, the Court would still find it would be unreasonable to exercise personal jurisdiction under this distinct set of facts. Here, California citizens passed a law by ballot initiative in which they determined it would be a criminal offense to sell pork that was offspring of a sow that was raised in ways they determined to be inhumane and possibly dangerous to the health of California consumers. It would not be reasonable to expect a federal judge in Iowa to bar California from enforcing its own duly enacted law, particularly when the claims are only based on vague assertions that the enforcement of the law could affect some Iowa farmers indirectly. The Court is also unaware of any prior case that would justify taking such an action. California has an interest in passing its own laws and principles of federalism weigh against a judge in a different state invalidating those laws. Nothing in this order would preclude plaintiffs from raising their claims in California.

Under this set of facts, in which plaintiffs are asking the Court to invalidate another state's criminal law that was enacted through a ballot initiative by its citizens, the Court finds it would be unreasonable to assert personal jurisdiction over defendants.

### e.    *Conclusion*

The Court finds the quality, quantity, and relationship of the contacts to the claims does not support a finding that defendants had the contacts necessary to support personal jurisdiction in Iowa. Also, under the effects test, defendants' contacts may have been intentional, but the acts were not uniquely or expressly aimed at Iowa and the acts were not done with the knowledge the brunt of the harm would be felt in Iowa. The final two personal jurisdiction factors are mostly neutral but could lean slightly toward establishing

personal jurisdiction because Iowa does have an interest in providing a forum for its citizens. Last, even if minimum contacts had been established, the Court still finds it unreasonable to exercise personal jurisdiction over California under the facts here.

Thus, the Court finds it does not have personal jurisdiction over defendants and defendants' motion to dismiss is **granted**.

## B. Venue

Personal jurisdiction and venue are two distinct principles that both have different applicable standards. There are, however, some similarities and thus the Court will also consider the venue question.

### 1. Applicable Law

"Jurisdiction and venue are separate questions." *Woodke v. Dahm*, 873 F. Supp. 179, 196 (N.D. Iowa), *aff'd*, 70 F.3d 983 (8th Cir. 1995). "The personal jurisdiction standard is concerned with where a case *may* be heard consistent with due process; venue is a statutory requirement that reflects 'Congress' decision concerning where a case *should* be heard.'" *Maybelline Co. v. Noxell Corp.*, 813 F.2d 901, 904 (8th Cir. 1987) (quoting *Johnson Creative Arts, Inc. v. Wool Masters, Inc.*, 743 F.2d 947, 951 (1st Cir. 1984)). "One of the central purposes of statutory venue is to ensure that a defendant is not 'haled into a remote district having no real relationship to the dispute.'" *Woodke v. Dahm*, 70 F.3d 983, 985 (8th Cir. 1995) (quoting *Cottman Transmission Sys., Inc. v. Martino*, 36 F.3d 291, 294 (3d Cir. 1994)).

Venue is appropriate in federal courts as follows:

**(b) Venue in general.**—A civil action may be brought in—

> **(1)** a judicial district in which any defendant resides, if all defendants are residents of the State in which the district is located;

> **(2)** a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated; or

22

**(3)** if there is no district in which an action may otherwise be brought as provided in this section, any judicial district in which any defendant is subject to the court's personal jurisdiction with respect to such action.

28 U.S.C. § 1391(b).

A defendant may raise the propriety of the plaintiff's chosen venue by pre-answer motion to dismiss. FED. R. CIV. P. 12(b)(3). "When reviewing a Rule 12(b)(3) motion to dismiss for improper venue, the Court applies the same standard used for other motions to dismiss. The Court must view all facts and resolve all conflicts in a manner most favorable to the plaintiff, and the defendant, as the movant, has the burden of establishing that the venue is improper." *Safco Prods. Co. v. WelCom Prods., Inc.*, 730 F. Supp. 2d 959, 963 (8th Cir. 2010) (internal citations omitted). When considering a Rule 12(b)(3) motion, however, "the [C]ourt may consider matters outside the pleadings." *Spanier v. Am. Pop Corn Co.*, No. C15-4071-MWB, 2016 WL 1465400, at *10 (N.D. Iowa Apr. 14, 2016).

### 2. *Discussion*

Defendants argue that venue is improper in Iowa because the Court lacks personal jurisdiction over defendants. (Doc. 10-1, at 24). Defendants' primary argument relating to venue, however, is that if the Court finds it has both subject matter jurisdiction and personal jurisdiction over defendants, the Court should transfer venue in this case to California. (*Id.*, at 24–26). The Court found above that it does not have personal jurisdiction over defendants, so the Court need not consider defendants' request to transfer the case to California. Instead, the Court will focus its analysis on defendants' argument that venue is improper in Iowa.

"When venue is challenged, the court must determine whether the case falls within one of the three categories set out in 1391(b)." *Atlantic Marine Const. Co. v. U.S. Dis. Court for W. Dist. Tex.*, 571 U.S. 49, 56 (2013). "If it does, venue is proper; if it does

not, venue is improper and must be dismissed or transferred under [Section] 1406(a)."
*Id.*

First, neither party contends that any of defendants reside in Iowa and thus, an Iowa venue is not proper under Section 1391(b)(1). Second, as the Court discussed in the personal jurisdiction section, a substantial portion of the events did not occur in Iowa. It is true there were some effects felt in Iowa, but defendants' actions took place in California and plaintiffs have not alleged facts showing the brunt of the harm occurred in Iowa. Last, the Court has already found that defendants are not subject to the Court's personal jurisdiction with respect to any action at issue here. Thus, venue is also not proper under Section 1391(b)(3). Having found the claims do not satisfy any of the possibilities under Section 1391(b), the Court further finds that venue is not proper in the Northern District of Iowa.

### C. Subject Matter Jurisdiction, Standing, and Transfer

Defendants also move to dismiss plaintiffs' claims because the Court lacks subject matter jurisdiction and because plaintiffs do not have standing to bring this suit. Defendants also request, alternatively, that the Court transfer the case to California. The Court has already found it does not have personal jurisdiction over defendants and does not have the authority to hear the case. Thus, it need not also evaluate subject matter jurisdiction, standing, or whether the case should be transferred.

### D. Conclusion

For these reasons, the Court finds it lacks personal jurisdiction over defendants. Further, venue is not proper in the Northern District of Iowa. Thus, defendants' motion to dismiss is **granted**.

## V. MOTION FOR PRELIMINARY INJUNCTION

On June 29, 2021, several days after defendants filed their motion to dismiss, plaintiffs moved for a preliminary injunction. (Doc. 13). Specifically, plaintiffs

requested that the Court "issue an order prohibiting Defendants from implementing or enforcing any Proposition 12 requirement within the Court's jurisdiction and for such further and other relief as the Court deems appropriate." (*Id.*, at 12).

As stated above, "[j]urisdiction to resolve cases on the merits requires both authority over the category of the claim in suit . . . and authority over the parties . . ., so that the court's decision will bind them." *Ruhrgas AG*, 526 U.S. at 577. Indeed, the jurisdictional requirement applies in cases in which a party seeks injunctive relief like plaintiffs seek here. *See Land-O-Nod Co.*, 708 F.2d 1338 at 1340 (holding "that it was not proper for the district court to grant the preliminary injunction because the court had no personal jurisdiction over the defendants"); *see also Pro Edge, L.P. v. Gue*, 374 F. Supp. 2d 711, 724–25 (N.D. Iowa 2005) (finding the court had personal jurisdiction over defendant and thus, could proceed to the merits of the preliminary injunction motion); *Med-Tec Iowa, Inc. v. Computerized Imaging Reference Sys., Inc.*, 223 F. Supp. 2d 1034, 1038 (S.D. Iowa 2002) ("Because the Court finds it has no jurisdiction over Defendant . . ., it cannot reach the merits of Plaintiff's Motion for injunctive relief.").

Here, the Court has already found it does not have personal jurisdiction over defendants and thus, the Court cannot reach the merits of plaintiffs' motion for injunctive relief. Plaintiffs' motion for a preliminary injunction is **denied as moot**.

## VI.     MOTION TO STAY

Defendants also filed a Motion to Stay Resolution of Plaintiffs' Motion for a Preliminary Injunction. (Doc. 19). In their motion, defendants request the Court "stay resolution of Plaintiffs' Motion for Preliminary Injunction pending resolution of Defendants' Motion to Dismiss." (*Id.*, at 2).

The Court has already denied as moot plaintiffs' motion for a preliminary injunction and thus, defendants' request to stay that decision must also be denied as moot. Also, the Court was required to consider the jurisdictional issues raised in the motion to

dismiss before turning to the merits of plaintiffs' motion and its analysis necessarily meant granting defendants' request to rule on the motion to dismiss first. Because the requested relief was already accomplished through the Court's ruling on defendants' motion to dismiss, it could not grant any further relief to defendants.

Thus, defendants' motion to stay (Doc. 19) is **denied as moot**.

## VII. CONCLUSION

For these reasons, defendants' motion to dismiss (Doc. 10) is **granted** and this case is **dismissed without prejudice**. Plaintiffs' motion for a preliminary injunction (Doc. 13) is **denied as moot**. Defendants' motion to stay resolution of plaintiffs' motion for a preliminary injunction (Doc. 19) is also **denied as moot**.

**IT IS SO ORDERED** this 23rd day of August, 2021.

_____
C.J. Williams
United States District Judge
Northern District of Iowa